STATE *v.* JOEL W. PIERCE.

February Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed May 5, 1931.

*Edward J. Hall* for the respondent.

*Norton Barber,* State's attorney, for the State.

MOULTON, J. The respondent was convicted of tapping the electric line of the Twin State Gas & Electric Company, so that electric current could be taken therefrom, and using the current thus taken without the company's consent. After verdict he

moved in arrest of judgment and to set aside the verdict. Both motions were overruled, and the case is here on his exceptions.

■ The first ground for the motion in arrest was that the complaint was too uncertain to support a judgment because it might apply to either of two distinct offenses, each carrying its own penalty. The complaint charged that the respondent, at Bennington, in the County of Bennington, "did tap an electrical line of a corporation distributing electrical energy in this State, so that electricity could be taken therefrom, to wit, the electrical line which carries electricity to his (the respondent's) house, and which belongs to the Twin State Gas & Electric Company; and also knowingly used electricity taken by such tapping from said line without the consent of said Twin State Gas & Electric Company." The two offenses which the respondent claims are included in the language of the complaint arise under G. L. 5675, and G. L. 6973, as amended by No. 129, Acts 1927. The former section provides that a person who wilfully or intentionally injuries a wire, post, or fixture maintained in pursuance of Chapter 235, G. L., or wilfully interferes with the working of the same, or aids or assists therein, shall be liable to a certain penalty. The latter, so far as is material here, provides that a person "who taps an electrical line of a person, firm, association or corporation (engaged in manufacturing, selling or distributing electrical energy) so that electricity can be taken therefrom, or knowingly uses electricity taken from said line without the consent of such person, firm, association or corporation," shall be punished in a certain manner. Clearly the complaint charges only an offense under G. L. 6973 as amended.

■ ■ The second ground for the motion was that the complaint was so indefinite that it did not give the respondent the information reasonably necessary to enable him to prepare his defense, the Town of Bennington being six miles square, and there being no indication where he tapped the wires, which, as a matter of common knowledge extended over much of the town, and the three villages therein. But the averment that the acts were done "in Bennington in the County of Bennington" was a sufficient description of the place where the offense was claimed to have been committed. *State* v. *Romano*, 101 Vt. 53, 55, 140 Atl. 492, and cases cited. The respondent argues that the description of the electrical line as being the one which carried electricity to the respondent's house could not apply to

■

the wiring inside the house, where the State, on trial, claimed that the tapping was done. But this question involves an examination of the evidence and this is no part of the record to which we are confined in reviewing the ruling on the motion. *State* v. *Longe*, 96 Vt. 7, 13, 116 Atl. 81, and cases cited; *Boville* v. *Dalton Paper Mills*, 86 Vt. 305, 318, 319, 85 Atl. 623. The motion in arrest of judgment was without merit.

The grounds for the motion to set aside the verdict were that it was against the weight of the evidence; and that there was no evidence upon which the jury could find the respondent guilty beyond a reasonable doubt.

■ ■ Upon the first ground the motion was directed to the discretion of the trial court, and its ruling, in the absence of an abuse of discretion, is not revisable. *Temple* v. *Atwood*, 99 Vt. 434, 435, 134 Atl. 591. Upon the second ground the evidence must be taken in the most favorable light for the State, for, in this respect, the motion is the same in nature and substance as a motion for a verdict. *Shields et al.* v. *Vermont Mut. Fire Ins. Co.*, 102 Vt. 224, 255, 147 Atl. 352; *Spaulding* v. *Mutual Life Ins. Co.*, 94 Vt. 42, 57, 109 Atl. 22; *Wellman* v. *Wales*, 98 Vt. 437, 438, 129 Atl. 317; *Paska et al.* v. *Saunders et al.*, 103 Vt. 204, 153 Atl. 451.

■ The evidence introduced by the State tended to show the following facts: The respondent was a customer of the Twin State Gas & Electric Company. The company's wires were connected with the respondent's house, and the company's meter was installed therein. This meter was tested on November 16, 1925, and was shown to be 100% accurate on normal and light loads, and 3/10 of 1% slow on high load, and was a correct meter. It was the company's custom and rule to seal its meter boxes when installed, and the foreman of the meter department stated that his recollection was that a seal was put on this box at that time. Although it was the duty of the meter readers to report unsealed boxes, the foreman knew of no report, as to this box, until later, after suspicion had arisen as to the respondent, and then orders were given that it should be left unsealed while the tests hereinafter described were being made.

The records of the company disclosed that the consumption of electricity, as shown by the respondent's meter, was considerably less for the month of January, 1930, than it had been for the same month in 1929. Thereupon a check meter duly tested

for accuracy was placed upon one of the company's poles near the respondent's house, concealed in an empty transformer box, and connected in such a manner as to register all current that went into the respondent's house. The readings of the check meter and the house meter were compared, and disclosed that from February 4 to April 4, 1930, the former showed a consumption of 254½ kilowatts, and the latter a consumption of 153 kilowatts. The meter box, which, as we have seen, had been found to be unsealed, was then sealed and thereafter readings taken from both meters for about a month showed practically the same consumption.

When the company's foreman, on April 4, came to the respondent's house for the purpose of sealing the meter box, one of the latter's children ran ahead of him into the cellar, where his father was and where the box was situated, and the respondent met the foreman at the cellar door, and told him that he was having trouble with the lights. The foreman found the meter box unsealed and one fuse on the load set was gone, a penny being used as a fuse on the other side. A weather proof socket had been attached to two wires coming out of the load fuse on the customer's side of the line, just where the wires left the box. Inside the box were bare switch blades. To "jump the meter," that is, to carry the current around the meter so that it would not register, all that was necessary to be done was to run one wire from the socket to the switch inside the box and to take out one load fuse. A connection would thus be made between the line leading into the meter and the line leaving the meter on the other side. This could not be done if the meter box were sealed.

Under these circumstances it cannot be said that there was no evidence fairly and reasonably tending to show respondent's guilt, or that the jury, upon the consideration of it, was not warranted in finding him guilty beyond a reasonable doubt. In passing upon this motion the effect of modifying evidence must be excluded. *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 109 Atl. 270. There being some evidence tending to support or justify the verdict, it was for the jury to construe it and determine its weight. *French* v. *Wheldon,* 91 Vt. 64, 69, 99 Atl. 232.

Neither was there an abuse of discretion in denying the motion upon the first ground. No error appears in the ruling below.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*