Sullivan,
Dec. 7, 1943. } No. 3443.

SHIRLEY LEGERE, *by her next friend v.* GERALD BUINICKY.

ARNOLD LEGERE *v.* SAME.

*Albert D. Leahy* (by brief and orally), for the plaintiffs.

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the defendant.

JOHNSTON, J.    At the time of the accident the plaintiff Shirley and a girl friend of hers were being carried to their respective homes by the defendant.    Also in the car were two brothers of the defendant and another young man.    The car proceeded northerly on Pearl Street and at the intersection with Myrtle Street there was a collision between it and an automobile driven easterly on the latter

street by one Floyd Tracy. Just southerly of the intersection there was a stop sign on the easterly side of Pearl Street. The defendant went into the intersection without stopping at the sign.

The defendant requested that the jury be instructed that the stop sign was not legally established and that the law of the road relative to intersecting ways be charged. These requests, which were not given, raised the issue of whether the stop sign was legally placed, and if so the effect of such a sign. Of course if the sign was not placed in accordance with statutory authority directly or under an ordinance, then it was a mere circumstance of the accident, entitled to such consideration as a warning and a suggestion for caution in operating a motor vehicle as a reasonable driver under the circumstances would give to it, but without legal requirement beyond its bearing as a detail of the situation upon due care of a driver passing northerly through Pearl Street and approaching Myrtle Street. *Tetreault* v. *Gould*, 83 N. H. 99, 104.

At the time of the accident on July 8, 1941, the statute providing for stop signs was Laws 1941, c. 35, s. 1, which became effective March 27, 1941. This empowered selectmen "to make special regulations as to the use of vehicles upon particular highways, except as to speed . . . ; to establish stop intersections, erect, and provide for the control of traffic by, stop signs or other traffic devices or signals which shall conform to standards set by the highway commissioner and shall be approved by him as to type, size, installation and method of operation." No evidence was introduced at the trial that the stop sign on Pearl Street conformed to standards set by the Highway Commissioner or that it was approved by him. Accordingly it could not be found that the sign was legally erected and maintained, and the defendant was entitled to have the jury so instructed. Failure to give such instruction was reversible error.

Whether the town ordinance adopted by the selectmen to take effect May 1, 1933, which provided that no person should drive a vehicle past the stop sign on Pearl Street at its intersection with Myrtle Street without first coming to a full stop became legally effective need not be considered. If it did, it was subject to the enactment of the above-quoted police measure in 1941, and at the time of the accident all highway stop signs in Claremont were subject to the requirements of this statute. If it should be proven at a later trial that the stop sign involved did meet the requirements of the 1941 act and so was legally erected and maintained, proof that the ordinance was valid adds nothing to the legal effectiveness of the

sign. The requirement of the ordinance that the driver of a motor vehicle should come to a full stop follows from the provisions of the statute of 1941 empowering selectmen to erect stop signs. If there is any inconsistency between the meaning of the ordinance and the statute as to the place of stopping, the latter must prevail.

In the event that it is shown at another trial that the stop sign was established in accordance with the provisions of the 1941 law, then of course it became legally effective and required that an operator of a motor vehicle going northerly on Pearl Street should stop before entering the intersection with Myrtle Street. The defendant claims that even in such a situation as this he still had the right of way in accordance with the law of the road as he was approaching on the right and he requested the Court to so charge. This the Court refused to do and the defendant excepted. The right of way statute would not apply if traffic on both of the streets involved had been controlled by a traffic device or signal. Laws 1935, c. 117, s. 6. But this was not the fact. The only device was the stop sign on Pearl Street placed for the obvious purpose of requiring traffic going northerly on that highway to stop. From the evidence it could be found that the vehicles arrived at the intersection at approximately the same instant. The requirement of a valid stop sign and that of the law of the road concerning the right of way can both be given effect, although the rule of reasonable care that this law of the road is subject to must take into consideration the detail of a stop sign where there is one. "With the exception of a required stop at an arterial highway, the principles of law applicable to traffic thereon as to right of way privileges are the same as upon nonfavored streets, modified, however, by the conditions arising out of the stop requirement." 3-4 Huddy, Automobile Law, s. 151, which cites in support of this principle *McCulley* v. *Anderson*, 119 Neb. 105. Other cases holding similarly are *Dikel* v. *Mathers*, 213 Ia. 76; *Johnston* v. *Selfe*, 190 Minn. 269; *Nielsen* v. *Richman*, 114 F. (2d) 343. If the stop sign on Pearl Street was legally established, the defendant was obliged to stop before entering the intersection, but subject to such duty the usual rule in regard to right of way applied in the absence of some municipal regulation to the contrary.

The defendant asked that the Court include in its charge the first sentence of the speed statute (Laws 1937, c. 125, s. 1; R. L., c. 119, s. 29) with the statement that if the jury found that Floyd Tracy violated this provision and that such violation was the sole cause of the accident, verdicts should be given for the defendant. The trial

Justice instructed the jury as follows: "That is, it was the duty of Mr. Tracy and the defendant had the right to assume that he would operate his car in a reasonable manner and with due care, and if he failed to do so, either generally, or as to keeping a look-out or as to speed or as to the manner in which he approached this intersection, and such failure was the sole cause of the collision, then Mr. Buinicky is not liable." The portion of the statute quoted in the defendant's request does not set up mathematical limits to speed. *Feuerstein* v. *Grady*, 86 N. H. 406, 409. It is declaratory of the common law, and the charge sufficiently complied with the request.

Exceptions to the exclusion of a diagram previously made by the witness Tracy in the course of his cross-examination and to the admission of so-called possibility evidence of Dr. Keeley are not considered as these points may not arise at another trial.

*New trial.*

All concurred.