STATE *v.* LUTHER WILSON.

February Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 2, 1944.

*Frederick W. Wakefield, Jr.,* for the respondent.

*Alban J. Parker,* Attorney General, and *Wayne C. Bosworth,* State's Attorney, for the State.

BUTTLES, J. The respondent shot and killed his wife, Mabel Wilson, in the small house in Ferrisburg in which they resided, at about 9:45 P. M. or a little later on July 29, 1943. He was indicted by a grand jury for murder in the second degree and upon trial was found guilty as charged. Judgment was rendered and sentence

imposed and the respondent comes to this Court upon exceptions to the denial of his motion for a directed verdict seasonably made and the denial of his motion to set aside the verdict and for a new trial.

The respondent and the deceased were alone in the house at the time of the shooting and the former was the only eye witness. The killing was done with a 22 caliber rifle. An autopsy indicated that the bullet entered the body just above the left collar bone, passed through a part of both lungs and lodged just beneath the skin on the right side of the back slightly above the level of the right arm-pit. The doctor was of the opinion that at the time she was shot the deceased must have been standing or sitting with her left shoulder, or perhaps the entire upper part of the body, bent slightly forward. The respondent had lost his left leg below the knee and wore an artificial leg. The witness Shortsleeve was the first person to arrive at the scene. He found the deceased's body lying on the floor diagonally across the threshold between the bedroom on the ground floor occupied by the respondent and the deceased, and the room used as a kitchen and living room. The respondent was in the bedroom. Officer Harrington, who was the second person to arrive, found the artificial leg in the kitchen at a place where the respondent testified it was put by the deceased prior to the shooting.

The ground of the respondent's motion for a directed verdict was in substance that the evidence did not warrant a finding of guilty beyond a reasonable doubt. This motion as well as the motion to set aside the verdict is governed by the rules applicable in civil cases. *State* v. *Rounds,* 104 Vt 442, 448, 160 A 249. In passing upon the motion for a directed verdict the evidence must be taken in the light most favorable to the State, and the ruling of the trial court sustained if the evidence, so viewed, fairly and reasonably tends to support the verdict. *Tinney* v. *Crosby,* 112 Vt 95, 101, 22 A2d 145, and cases cited.

The only defense upon which the respondent relied was self-defense. He contended that he was sitting on the bed with his artificial leg off when his wife started to come into the bedroom armed with a shot gun which was aimed at him; that he thought she intended to shoot him and he shot her to prevent her from doing so. These alleged facts were incorporated into a statement signed by the respondent which the State introduced in evidence.

Since this evidence tended to show that the respondent was first assaulted, the burden was upon the State to prove beyond a reasonable doubt that the acts of the respondent were not done in self-defense. *State* v. *Rounds,* 104 Vt 442, 451, 160 A 249; *State* v. *Patterson,* 45 Vt 308, 314, 12 Am Rep 200. The amount of force which one may justifiably use in self-defense is such as reasonably appears to him to be necessary under all the circumstances, and whether he is justified in the particular occasion depends upon whether the jury find that it reasonably appeared to him that it was necessary to use the force that he did use. *State* v. *Rounds, supra; McQuiggan* v. *Ladd,* 79 Vt 90, 105, 64 A 503, 14 LRANS 689. A person, when assaulted, can only take life in self-defense when it reasonably appears to him that he is in danger of death or serious bodily harm. *State* v. *Tubbs,* 101 Vt 5, 23, 139 A 769.

In the present case a verdict of not guilty would be imperative only if the jury could not reasonably find facts at variance with those upon which the respondent relies, and could not reasonably find that an inference of self-defense does not follow from the facts found. The respondent's argument is based mostly upon his own testimony, but this direct testimony might, of course, be met by circumstantial evidence. *Haskins* v. *Haskins Est.,* 113 Vt 466, 35 A2d 662. See *State* v. *Rounds,* 104 Vt 442, 451, 160 A 249. Especially would this be true in regard to the respondent's frame of mind.

Among the items of evidence by reason of which the jury might consider the respondent's testimony discredited in one or both of the above particulars are the following. That at the time of the shooting the respondent was sitting on the edge of the bed about midway between the head and the foot is not questioned. In the statement above referred to the respondent stated that he saw his wife "coming toward the bedroom I was in with a shotgun." On the stand he testified: "I happened to glance and I could see the muzzle of that shotgun coming around the casing of the door," and at another time he testified that it was the gun striking the casing which first attracted his attention. As shown by the exhibits the easterly casing of that door was less than one foot from the east wall of the house. Because of a chair and a stand at that side of the door in the kitchen the jury could have found it impossible that

from the middle of the bed he could have seen her "coming toward the bed room." The jury could reasonably find that at that time it was too dark to see by natural light, and that the only artificial light available was a flash light which the respondent had. The respondent testified that he remembered firing only one shot, but two witnesses testified to hearing a second shot after a short interval and the marks of two bullets were found in the walls of the room.

There was evidence that the respondent was a drinking man of violent temper; that prior to the shooting he had been drinking; that he had made assaults upon his wife on other occasions and that on one such occasion, in the summer of 1943, he had threatened to shoot her, after which, at her request, friends took his guns and butcher knives and hid them. The respondent testified that prior to the shooting the shotgun with which his wife threatened him had been suspended from hooks over the west outside door of the kitchen and during the altercation she had removed his artificial leg to the kitchen. The first person who arrived after the shooting was the deceased's brother. He testified that he found the respondent sitting on the bed and that he flashed his light and with the rifle in his hand said to the witness: "You duck, you bastard, or you'll get one." He saw the deceased's body on the floor but saw no gun protruding from under it. But the next person to arrive, Officer Harrington, testified to finding the gun protruding from under the body and pointed toward the bed; also that the respondent was then sitting on the floor and that he found the leg in the kitchen in the place where the respondent testified the deceased had put it. But Harrington did not arrive until about an hour after the first witness had left. The respondent is nearly six feet tall and weighed about 180 lbs. So far as appears he had no disability except the loss of his leg. If the jury discredited the respondent's testimony, a reasonable explanation of Harrington's testimony would be that during the interval before his arrival the respondent had crawled into the kitchen and with the aid of a chair or otherwise had taken the gun from above the door and had placed it under the deceased's body, and that he had also put the artificial leg at the place where it was found.

The respondent relies upon the quotation from *Rogers* v. *State,* 60 Ark 76, 29 SW 894, 31 LRA 465, 46 ASR 154, approved in

*State* v. *Rounds, supra,* at page 456 of 104 Vt at page 253 of 160A, and reading thus: "If the first shot was fired in self-defense, and the last shot neither caused his death nor contributed to or hastened it, then he could not properly be convicted of any degree of homicide." In the Rounds case this quotation is preceded by the statement that "in the latter case, where the evidence warranted the assumption that the first shot was in self-defense and the second could not be so justified, the court said:" The quotation is clearly inapplicable here.

Enough has been said to indicate that there was no error in the denial of the motion for a directed verdict.

■ The motion to set aside the verdict and for a new trial was based upon the grounds (1) that the verdict was against the weight of the evidence and (2) that the verdict was against the law of the case and the instructions of the court. The first ground was addressed to the discretion of the trial court and is not revisable here since there is no claim that such discretion was abused or withheld. *Dyer* v. *Lalor,* 94 Vt 103, 114, 109 A 30; *Sargent* v. *Robertson,* 104 Vt 412, 420, 160 A 182; *Rule* v. *Johnson,* 104 Vt 486, 490, 162 A 383; *Butler, Admr.* v. *Favreau,* 105 Vt 382, 383, 166 A 1.

■ The respondent does not state the exact words of the instruction which he says the jury failed to follow. What the court said in the connection indicated was as follows: "Circumstantial evidence is entitled to the same weight as direct evidence, provided always that it is of such a character as to exclude every reasonable hypothesis other than the one that the respondent is guilty. If you can reconcile circumstantial evidence, in this or any other case, upon any reasonable basis which is consistent with the respondent's innocence, he is entitled to have it so resolved." As we have seen there was evidence in the case pointing to the guilt of the respondent and it was for the jury to say, as sole judges of the weight of all the evidence, direct and circumstantial, whether this evidence was sufficient to outweigh beyond a reasonable doubt, the evidence pointing to his innocence. The verdict was not inconsistent with the charge as given. The reason why the verdict is claimed to be contrary to law does not appear to have been indicated to the trial court, and therefore is not for consideration here. *Porter* v. *Flem-*

*ing,* 104 Vt 76, 82, 156 A.903; *Higgins, Admr.* v. *Metzger,* 101 Vt 285, 298, 143 A 394.

*Exceptions overruled.*