### Margaret M. Hebert v. Neil L. Stanley

[ 201 A.2d 698 ]

April Term, 1964

Present: **Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.**

Opinion Filed June 2, 1964

*Bernard J. Leddy* for the plaintiff.

*Albert W. Coffrin* and *Douglas C. Pierson* for the defendant.

**Shangraw, J.** This action arises from injuries sustained by the plaintiff as a result of a two-car collision which occurred on March 4, 1961 at the intersection of North Willard and Loomis Streets, in the city of Burlington, Vermont. Trial by jury resulted in a verdict and judgment for the plaintiff. The defendant appeals and assigns error in the court's instructions to the jury and to the court's failure to grant the defendant's motion to set aside the verdict as being excessive.

North Willard Street runs north and south, and is a part of U. S. Route 7. It is a heavily traveled street. Loomis Street runs east and west and is a relatively short street. At the time of the accident the plaintiff was operating an automobile in a southerly direction on North Willard Street, and the defendant was operating his automobile in an easterly direction on Loomis Street.

Since prior to 1932 or 1933 the defendant had resided on Loomis Street about a block easterly from the scene of the accident and was familiar with the intersection. Having served on the Board of Aldermen of the city of Burlington he also knew that stop signs had been erected at this intersection, one directing eastbound traffic on Loomis Street to come to a complete stop before entering the intersection, and the other likewise directing westbound traffic on Loomis Street to stop.

Plaintiff testified that when she reached a point 20 to 25 feet northerly of the intersection she saw the defendant's automobile proceeding easterly on Loomis Street at the rate of about 25 to 30 miles an hour. Defendant's automobile was then about 35 to 40 feet westerly of the intersection. Plaintiff was familiar with the stop signs. She did not see defendant's car again until just prior to the impact of the two automobiles at the intersection. Plaintiff testified that the defendant did not stop his automobile before entering the intersection.

The defendant stated that he stopped his automobile within ten feet of the intersection; that he looked in both directions on North Willard Street, and seeing no approaching traffic, then proceeded easterly about ten feet, at which time plaintiff's automobile passed directly in front of him. Defendant testified that he applied his brakes and immediately stopped his automobile. The two cars collided. Plaintiff sustained personal injuries. Each car was damaged to some extent. There was nothing obstructing the flow of traffic on North Willard Street.

Without going into the facts in detail, the plaintiff claims that she was moving on a major thoroughfare and was invited to continue moving by the absence of any restriction, coupled with the knowledge that any vehicle on the other street was commanded to come to a full stop and presumably would do so, before entering the intersection.

The first assignment of error relates to the following portion of the court's charge.

"Now, this corner of North Willard Street and Loomis Street, was control, or controlled traffic, on Loomis Street from both di-

rections by a Stop sign and, as such North Willard Street became what we call the through way. It is incumbent upon a person entering an intersection from a street on which traffic is controlled by a Stop sign to stop, according to the law as set forth by the sign, and then to proceed with due care to enter the intersection. If you should find that Mr. Stanley failed to stop at that Stop sign then it follows, as a matter of law, that he is prima facie guilty of negligence because the violation of an ordinance, or traffic control law is prima facie guilt of negligence."

As may be noted in the above quoted portion of the charge, the trial court referred to and treated North Willard Street as a "through way." Neither party claimed that such designation had been so made of this street. The provisions of 19 V.S.A. §§38 to 41 inclusive which. have reference to a "through way" were not applicable under the existing circumstances.

23 V.S.A. §1008, as amended by Act No. 104 passed at the 1961 session of the Legislature, authorizes the selectmen of a town, the trustees of an incorporated village and the aldermen or city council to make regulations with respect to stop signs at intersections.

The defendant asserts that no proof was presented that the stop signs on Loomis Street were lawfully erected under the charter of the city of Burlington by virtue of 23 V.S.A. §1008, as amended. This issue was first presented by the defendant's exception to the charge wherein the trial court in effect took judicial notice that the stop signs at the intersection were legally erected. Under our law a court cannot take judicial notice of a local ordinance. *State* v. *Pelletier,* 123 Vt. 271, 272, 185 A.2d 456. In the absence of legal proof of the claimed ordinance, it was error for the trial court to instruct the jury that the facts before them constituted prima facie evidence of negligence on the part of the defendant. Quoting from 60 C.J.S. Motor Vehicles §360, sub-section (e), "if a stop sign is not placed in accordance with statutory authority or under an ordinance, then it is a mere circumstance of the accident, entitled to such consideration as a warning and suggestion for caution in operating a motor vehicle as a reasonable driver under the circumstances would give to it." See *Legere* v. *Buinicky,* 93 N.H. 71, 35 A.2d 508. See *Dashnow* v. *Myers,* 121 Vt. 273, 281, 155 A.2d 859.

In its charge the court commented on the general law relating to the requirement of the exercise of due care of motorists in approaching and entering intersections; also, the substance of 23 V.S.A. §1033 which provides that "all vehicles shall give the right of way to other vehicles approaching at intersecting highways from the right; and shall have the right of way over those approaching from the left." This aspect of the charge was insufficient to cure the charge as it related to the existence of the local ordinance.

We would draw attention to that portion of the instructions by which the issue of proximate cause was to be considered by the jury in the event of a finding by them that the defendant had violated the stop sign ordinance. The exception taken by the defendant to this part of the charge is perhaps inadequate to reach this issue, but since we must reverse for reasons developed in this opinion, and in order to prevent a repetition of error on re-trial, we take the opportunity to dispose of this issue. The following language appears in the charge on this subject: "However, at this time, if you so find, the burden shifts to him to prove that even though he is prima facie guilty of negligence, that his negligence was not the result of the accident or the proximate cause of it and if by the evidence he sustains the burden of proof, then you may still find him not guilty of negligence that was the proximate cause of the accident. The first thing you have to consider is did he stop? Then, if you decide he did not stop, then he is prima facie guilty of negligence and the burden shifts to prove his negligence was not a proximate cause of the accident and, in order to successfully defend himself, he must sustain that burden of proof." By this instruction the trial court went astray.

In the first instance the burden of proof was on the plaintiff to prove negligence on the part of the defendant by a violation of the stop sign regulation, or otherwise, and that such negligence was a proximate cause of the accident and injuries complained of. Upon a finding of negligence by the jury the instructions erroneously placed the burden upon the defendant to show that his negligence was NOT the proximate cause of the accident and resulting injuries. This instruction was erroneous and had the issue been properly raised we would hold it to be prejudicial error.

The appellant's next argument deals with the inclusion in the charge of the sudden emergency doctrine. Defendant urges that it

was error to give plaintiff the benefit of this rule upon the facts presented. This doctrine was not made an issue during the trial; there was no argument by counsel on this point; nor was a request made for such instruction.

The sudden emergency doctrine presupposes the presence of a sudden peril through no fault of the party who seeks the benefit thereof. *Stevens* v. *Nurenburg* 117 Vt. 525, 533, 97 A.2d 250; *Menard* v. *Blanchard,* 117 Vt. 384, 390, 92 A.2d 616.

Plaintiff was aware of the stop signs on Loomis Street, and on first seeing the defendant rightfully assumed that he would bring his car to a stop before entering the intersection. Plaintiff continued southerly on North Willard Street and was in the intersection when the collision occurred. As bearing upon her lack of knowledge of impending danger in time to avert the accident we find in her testimony the following:

Q. You took no steps to avoid the accident before it happened?

A. There was nothing I could do.

Q. Do you know whether Mr. Stanley took any steps, before the accident, to avoid the accident?

A. He did not, to my knowledge.

Q. When were you first aware an accident was about to occur or had occurred?

A. I was aware he was going to hit me when he didn't stop and came up and he hit me.

It becomes apparent from the record that there was no abnormal behavior of the plaintiff to condone by applying the sudden emergency rule. No danger, sudden or otherwise, became apparent to the plaintiff which would have startled her into doing something which she would not otherwise have done. She had no knowledge of the impending accident until immediately before the impact occurred. Upon the facts presented the sudden emergency doctrine was not applicable here, and plaintiff was not entitled to the benefit of this rule. Its submission was error. *Ryalls* v. *Smith,* 124 Vt. 14, 196 A.2d 494.

Appellant next urges error on the part of the court in submitting to the jury future expenses for medical, surgical, hospital care and nursing, as items of compensable damage. This claim is addressed to that portion of the charge which reads: "If the evidence indicates

the probability of future expense for medical, surgical and hospital care, that must be taken into consideration . . . . and reimbursement for actual expenditures and legal liability incurred for medical treatment, care and nursing and any that may be expected to be incurred in the future." The defendant excepted to the foregoing as it related to future expense on the ground that there was no evidence to support a claim for such expense.

Following the accident the plaintiff was stricken with an intense pain in the lower back and was hospitalized about one month. For the first few weeks following her discharge from the hospital she remained in bed upon advice of her physician. Later she was up and about six hours a day. Plaintiff has been unable to perform many of her household duties because of her back condition, and sometimes has to stay in bed much of the day. This condition has persisted to the time of trial. She wears a special back brace which limits her activity to a great extent. Her physician testified that, by reason of the accident, he believed that plaintiff received "an acute sprain of her lumbosacra area and supporting structures." It further appeared from the doctor's testimony that in all likelihood she would be subjected to recurrence of pain in the low back throughout her life.

Plaintiff was 41 years old at time of trial. No evidence was introduced that future medical, surgical, or hospital care was likely to follow, or that future care or nursing would be required. Following the accident plaintiff became overweight, which affected her back condition, and a special diet was advised, which she has followed. The purpose of a reduction in weight was to help lessen the recurrence of back pains. This dietary food costs $5.00 a week over the normal outlay for groceries. No evidence was presented as to the length of time such special food would be required. The life expectancy of the plaintiff was conceded to be 31 years. While the evidence established that there was a high likelihood of future back symptoms, this, standing alone, provided no foundation upon which the jury could find that there was a reasonable certainty or a reasonable probability that the expenses in question would be necessarily incurred in the future, or for what period. Competent expert medical testimony was essential to lay a foundation for this claim. *Howley* v. *Kantor*, 105 Vt. 128, 133, 163 Atl. 628. Expert medical testimony on this point was not present in this case. This left the door ajar for the jury's speculation on future expenses and to this extent error appears.

The defendant also contends that error was present in the reception in evidence over his objection, and submission to the jury on the issue of damage, certain expenditures which defendant claims were a part of the husband's consortium cause of action. After entry of the verdict, the defendant moved to set it aside as being "excessive as based on the evidence in the case." Since there has already been established error affecting the amount of damage, a consideration of these assignments of error becomes unnecessary.

*Reversed and remanded.*