### State of Vermont v. John A. Shuttle

[ 230 A.2d 794 ]

April Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 6, 1967

*W. Edson McKee,* and *John A. Shuttle, pro se,* for respondent.

*Joseph C. Palmisano,* State's Attorney, for the State.

**Shangraw, J.** The respondent was found guilty of grand larceny in the Washington County Court on July 28, 1966. Following the jury's verdict of guilty, and before sentence, he moved that the court enter judgment in his favor notwithstanding the verdict of the jury, and in the alternative for a new trial. This motion was denied. Judgment was entered on the verdict and sentence imposed. On appeal the respondent now seeks a review in this Court.

The material facts as disclosed by the evidence are as follows: Kelly Construction, Inc. owned a large bronze bushing on April 12, 1966 which was stored in its compressor house located in the Town of Barre, Vermont. The following day this bushing was discovered missing. Its established value was $465.60 plus freight charges of $14.00. A large battery and a quantity of old bronze bushings were also gone.

The respondent was then employed by Kelly Construction, Inc. in its shop. On April 11, 1966 he and Raymond Goodell, another employee, were seen in the compressor room in which neither had authority to enter.

On May 7, 1966 Kenneth Plaster met the respondent in Pines Restaurant in Montpelier, Vermont, and then agreed to transport some junk for respondent to the place of Roy Bettis in Middlesex, Vermont. Mr. Bettis was a dealer in junk, furniture and antiques. Mr. Plaster had known the respondent for about three years, having met him in prison at Windsor.

The following day a number of boxes, brass and aluminum were transported to Middlesex in the automobile of Mr. Plaster and sold to Roy Bettis by the respondent. A second trip to Middlesex was

made on the same day at which time the respondent also sold to Mr. Bettis a large bronze bushing, later identified as the one stolen from Kelly Construction, Inc. All of these items so sold, including the bronze bushing, were picked up at the residence of the respondent, on State Street, Montpelier, Vermont.

Following investigation it was discovered that the bronze bushing in question had been sold by Mr. Bettis to a scrap yard owner in Burlington, Vermont, and by him shipped to Albany, N.Y. where it was finally located and produced at the trial. Respondent was charged with the theft of this bronze bushing and convicted.

The respondent filed a brief separate and apart from that of his counsel. As one of his assignments of error he urges that he was denied a fair and impartial trial. This relates to the reception of evidence, and comments of the State's Attorney, which he now claims as improper and prejudicial. We now refer to the evidence in question.

Mr. Plaster was improved by the State as its witness and on direct examination by the State's Attorney the following questions were asked and answers received.

"Q. Are you acquainted with the respondent, Jack Shuttle?
A. Yes.
Q. How long?
A. Off and on, three years. I met him in prison."

Later in direct examination, counsel for the State further inquired of this witness:

"Q. How long have you known Mr. Shuttle?
A. I don't really know him personally. I met him at Windsor."

The undeniable effect of the foregoing was to bring home to the jury the fact that the respondent had been previously convicted of a crime.

As stated in the case of *State* v. *Garceau,* 122 Vt. 303, 306, 170 A.2d 623, 625, "Character is never an issue in a criminal prosecution unless and until the respondent brings it into the trial. And the rule is firmly and universally established that the prosecution may not initially attack the defendant's character. *State* v. *Hedding,* 114 Vt. 212, 215, 42 A.2d 438; 1 Wigmore, Evidence, 3rd Ed. §57, p. 456; 22 A C.J.S. Criminal Law §676, p. 701; 20 Am. Jur. Evidence, §325, p. 304.

At page 306 of the Garceau opinion, *supra*, appears the following cogent statement in support of the rule forbidding such inquiry.

"It is not that character is irrelevant to the question of innocence or guilt, but policy forbids it until the accused has elected to make it an issue. The reason for the rule of exclusion lies in the tendency of triers of the fact to give excessive weight against the accused to a vicious criminal record. Moreover, it tends to obscure the main issue and calls upon the accused to account for past offenses for which he is not being tried. The natural and inherent effect of evidence or other unrelated offenses upon the minds of the jury is to prejudice them against the respondent. *State* v. *Howard,* 108 Vt. 137, 155, 183 A. 497; see also, 1 Wigmore, Evidence, *supra,* and §194 p. 646.

While the line of inquiry does not reveal that respondent had been convicted of any crime, his presence "in prison" and "at Windsor" reasonably permitted the jury to arrive at such a conclusion.

During summation the State's Attorney undertook to gain advantage of this situation by stressing respondent's prior commitment in prison. The transcript reveals that this aspect of the argument was objected to by counsel for the respondent. The State's brief does not deny that such an argument was made. It seeks to avoid the effect of this point by stating that the full import of the argument does not appear, and that the exact words of the State's Attorney were not placed on the record. There is no disclaimer that the respondent's prison record was referred to by the State's Attorney.

In objecting to this argument on the part of the State's Attorney it was not essential to the preservation of the objection to restate the language employed by the prosecuting attorney. It is the substance of the argument which unquestionably was involved which created the prejudice amounting to error.

The record shows no effort of the trial court to strike down this argument. Such failure of the court to take action on the respondent's objection to the argument was an implied ruling that it was proper. *Hall* v. *Fletcher,* 100 Vt. 210, 213, 136 Atl. 388. This argument should have been struck down as an unwarranted appeal to prejudice. The jury should have been cautioned to disregard it. See, *Knight* v. *Willey,* 120 Vt. 256, 264, 138 A.2d 596; *Duchaine* v. *Ray,* 110 Vt. 313, 321, 6 A.2d 28. Failure to do so was error.

Under the circumstances we are satisfied that respondent's right to a fair and impartial trial could only be protected by affording him a new trial.

In our consideration of respondent's motion for judgment notwithstanding the verdict, we treat such a motion as one for a directed verdict. *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328, 330, 173 A.2d 584. Such a motion cannot properly be granted if there is evidence fairly and reasonably tending to support the verdict.

Here, the evidence must be taken in the light most favorable to the State. *State* v. *Hodgdon*, 118 Vt. 101, 102, 99 A.2d 615; *State* v. *Bromley*, 117 Vt. 228, 229, 88 A.2d 833. Without delving further into the factual situation leading up to respondent's conviction we are satisfied that the motion was properly denied.

Several other assignments of claimed error have been briefed. These need not be considered in view of the fact that there must be a reversal and remand for a new trial.

*The order denying respondent's motion for judgment notwithstanding the verdict is affirmed. Judgment reversed and cause remanded for a new trial.*