## State of Vermont v. Wilfred P. Bishop

[260 A.2d 393]

No. 27-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 2, 1969

222

*James M. Jeffords,* Attorney General and *William T. Keefe,* Assistant Attorney General for the State.

*Charles J. Adams,* Waterbury, for Defendant.

**Shangraw, J.** A Washington County Grand Jury returned a true bill against the respondent concerning a shooting incident which occurred on October 4, 1968. He was thereupon indicted for disturbing and breaking the public peace by assaulting his wife, Florence Bishop, with a .22 caliber revolver.

On arraignment respondent entered pleas of not guilty and not guilty by reason of his insanity. Thereafter he was tried by jury in Washington County Court and found guilty.

At the conclusion of the State's case, the respondent moved for a directed verdict of not guilty by reason of insanity and for a directed verdict of acquittal. The same motions were renewed at the conclusion of all of the evidence. He moved for a mistrial by reason of comments made by the State's Attorney during his summation to the jury. Respondent excepted to certain portions of the court's charge. Following the verdict, he moved that the verdict rendered be set aside and a new trial granted, and also, that the court enter a judgment of acquittal notwithstanding the verdict. All of these motions were denied.

The issues in this case on appeal are in general whether there was sufficient evidence to sustain or support a verdict and judgment of guilty; whether a mistrial should have been declared because of a comment by the State's Attorney during his summation; and, whether the court's instructions to the jury on the subject of sanity or insanity were correct, complete and proper.

For all practical purposes, the facts with respect to the actual assault are undisputed. No evidence was offered by the respondent denying that he had committed the alleged offense. The only material area of disagreement in the case, as between the State and the respondent, relates to respondent's sanity or insanity at the time of the alleged assault.

The respondent and Florence Bishop had been married for thirty-one years prior to the date of trial which was held on January 22 and 23, 1969. They were living in Graniteville, Vermont, at the time of the assault in question.

Their married life had been happy until about five years previous to the trial. Marital discord arose between them and during the last year Mrs. Bishop had considered seeking a divorce. The most recent discussion between the Bishops about a divorce had been just before Mrs. Bishop left her home on a Tuesday evening. She did not see the respondent again until he assaulted her on Friday of that week, nor did she inform him of her whereabouts, or with whom she was staying.

The respondent had been employed by the Rock of Ages Corporation for fifteen years. His most recent employment was in the capacity of a stock man. He was conscientious in his work and had a good work record.

Mrs. Bishop was employed at the Rock of Ages Capacitor Plant on South Main Street, Barre, Vermont. Her daily shift ended about 3:30 P.M. and for about three weeks she had been transported home after work by a Mrs. Millie Meigs.

The alleged assault with a .22 caliber revolver was committed by the respondent by shooting Mrs. Bishop in the stomach while she was approaching the Meigs' car in the plant parking lot after she had ended her day's work on Friday, October 4, 1968. The shot was not fatal and Mrs. Bishop testified at the trial.

The respondent's health had been good up to about the time of the incident in question. At the time of trial he could not recall which days he worked or did not work during the week previous to the shooting. When he did work that week he could not concentrate, got worked up, was sick, vomited, and had to leave work on two or three occasions. On the morning of the shooting he left work for these reasons and went bird hunting.

The following persons observed the appearance of the respondent at about the time of, or shortly after the shooting, and in part testified as follows: Mrs. Florence Bishop,—he was normal; Mrs. Phyllis Mercier,—he had a dazed appearance and was restless; Mrs. Doris Lamphere,—his facial expression was just blank; Officer Thomas C. Mekklesen,—he appeared to be rational, his speech was normal and coherent, he cried; Donald Denko,—except for some tears in his eyes and being remorseful, he appeared normal; State Police Officer Nelson Lay,—there was nothing unusual about him; Chief of Police, Floyd Chandler,—nothing unusual; Donald Gauthier,—he didn't smoke a cigarette in his usual manner, didn't clearly or fully answer questions, had been crying and his appearance and facial expressions were not the same as in the past.

Donald Carpenter, a fellow employee, testified that shortly before the shooting, Mr. Bishop was easily upset while at work and appeared to be tense, ragged, disturbed and under great strain and that his work was not up to par.

Dr. William G. Young, of Burlington, Vermont, a psychiatrist, with thirty-five years of experience in this field, was the only expert witness who testified as to the sanity or insanity of the respondent. Following respondent's arraignment he was committed to the Vermont State Hospital, Waterbury, Vermont, for examination and on October 14, 1968 Dr. Young examined him for about one and one-half hours. During the trial Dr. Young was called as a witness by the State and later by the respondent in his defense.

His testimony and opinion were to the effect that Mr. Bishop was suffering from a mental defect or disease at the time of the shooting; that the type thereof was "dissociated reaction", that is, he was acting out of character with his inner personality, the sort of behavior that one sees when a person isn't really thinking of what he is doing; that such a condition

would include a period of amnesia which would not necessarily have to be of any particular duration; that at the time of the examination, Mr. Bishop's recollection of what happened at the time of the shooting was vague and that he recalled little of what happened between the time when he parked his car in the parking lot and the time when he found himself with his wife waiting for the authorities to arrive; that the period of non-recall or non-recollection of events, i.e. from the time he parked the car until he found himself waiting for the authorities, was a sufficient period of amnesia to support his opinion that Mr. Bishop was suffering from a mental illness or dissociated reaction at the time of the assault; that he was suffering from a traumatic mental condition and mental disease at the time of the shooting, and that this condition could have affected his mind considerably so that he would act differently than under ordinary circumstances; that it was possible that at the time of the shooting, his mind was governed by an uncontrollable and irresistible impulse to shoot Mrs. Bishop which was produced or grew out of a traumatic mental condition which he was unable to resist; and that the trauma which contributed to the mental disease or condition of Mr. Bishop at the time of the shooting including Mrs. Bishop's talk of divorce and her leaving home without telling him where she was going or where she was living.

Dr. Young testified that the respondent was sane at the time of his examination on October 14, 1968. In referring to respondent's condition at the time of the shooting, the doctor further expressed the opinion that Mr. Bishop's mind was seriously impaired, and that he was temporarily insane at that time.

The test of insanity as a defense in criminal cases in this State appears in 13 V.S.A. § 4801 and is as follows:

> (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks adequate capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

> (2) The terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. The terms "mental disease or defect" shall include congenital and traumatic mental conditions as well as disease.

In view of the testimony of Dr. Young and lay witnesses, we are led to the following question;

> Is the evidence in the case such that the jury could find beyond a reasonable doubt that the respondent was sane at the time of the alleged commission of the crime?

This question was properly preserved for this Court's review by suitable motions of the respondent.

■ A motion for a directed verdict and a motion for judgment notwithstanding the verdict are the same in nature and require that the evidence be viewed in the light most favorable to the party against whom the motion is made. *Baldwin* v. *Vermont Railways,* 126 Vt. 70, 71, 223 A.2d 556; *LaFaso* v. *LaFaso,* 126 Vt. 90, 95, 223 A.2d 814. While this is a criminal case, the rule in passing upon such motion is the same as in civil cases. *State* v. *Ballou,* 127 Vt. 1, 3, 238 A.2d 658. Here, the evidence must be taken in the light most favorable to the State. *State* v. *Shuttle,* 126 Vt. 379, 383, 230 A.2d 794.

■ The test laid down in passing upon these motions is whether the State introduced evidence fairly and reasonably tending to show respondent's guilt, or, in other words, whether the jury on the evidence was justified in finding the respondent guilty beyond a reasonable doubt. *State* v. *Ciocca,* 125 Vt. 64, 73, 209 A.2d 507; *State* v. *Ballou, supra,* page 3.

■ ■ When evidence appears in a criminal prosecution to indicate the respondent did not possess the requisite mental capacity to make him criminally responsible, it becomes the duty of the prosecution to establish, beyond a reasonable doubt, the respondent's sanity as an essential ingredient of the crime. Insanity is not an affirmative defense. It is a means of meeting the case made by the prosecution and weakening one of its essentials; beyond this it need not go. *State* v. *Warner,* 91 Vt. 391, 394, 101 A. 149; *State* v. *Blair,* 118 Vt. 81, 100, 101, 99 A.2d 677; *State* v. *Wilson,* 113 Vt. 524, 529, 37 A.2d 400.

■ Considerable latitude is allowed by the courts in admitting evidence which has a tendency to throw light on the mental condition of a respondent at the time of the commis-

sion of the crime, provided the proof tends to prove or disprove the issue involved. 29 Am.Jur.2d, Evidence, section 353.

■ Whenever the sanity or insanity of an individual is in issue, witnesses other than expert or professional men may relate their personal observations of the person whose mental condition is in question, so far as those observations tend to throw light upon that issue. 31 Am.Jur., Expert and Opinion Evidence, section 85.

■ A non-expert witness may give his opinion as to the sanity or insanity of another, when based upon conversations or dealings which he has had with such person, or upon his appearance, or upon any fact bearing upon his mental condition, with the witness' own knowledge and observation, he having first testified to such conversations, dealings, appearance or other observed facts, as the basis for his opinion. *Holton Estate* v. *Ellis,* 114 Vt. 471, 482, 49 A.2d 210; *State* v. *Hayden,* 51 Vt. 296, 304, 260 A.2d 398; *In Re Wood's Will,* 95 Vt. 407, 409, 115 A. 231.

■ Though it is for the court to judge, in the first instance, whether witnesses introduced as experts possess sufficient skill to entitle them to give an opinion, it is for the jury to determine from the testimony whether such experts have sufficient skill to render their opinion of any importance. *State* v. *Ward,* 39 Vt. 225, 229.

■ ■ It is well recognized in this State that the jury, being the trier of facts, is the sole judge of the credibility of witnesses and of the weight of their testimony. *State* v. *Hillker,* 117 Vt. 569, 572, 97 A.2d 119. Where there is some evidence tending to support the verdict, its construction and weight is for the jury. *State* v. *Pierce,* 103 Vt. 383, 387, 154 Atl. 675.

■ There is evidence in this case pointing to the sanity of the respondent and it was for the jury to say whether this evidence was sufficient to outweigh beyond a reasonable doubt the evidence pointing to respondent's insanity. *State* v. *Blair, supra,* 100, 101, 99 A.2d 677; *State* v. *Wilson,* 113 Vt. *supra,* 529, 37 A.2d 400. In the case of *Tarter* v. *State,* (Okla.Crim.)

359 P.2d 596 it was held that it was within the province of the jury to believe lay witnesses against medical testimony that defendant was insane.

The jury, by their verdict of guilty, apparently relied on the evidence of the lay witnesses who testified as to the normal and rational appearance of the respondent at the time of the alleged assault. Opposed to this evidence, and in support of respondent's claim of insanity, the testimony of Dr. Young and that of some of the lay witnesses was less convincing to the jury, as evidenced by their failure to find the respondent not guilty by reason of insanity.

In support of respondent's motion for a mistrial, attention is called to the following comments made by the State's Attorney during argument and summation to the jury. "I don't think he intended to kill her; I do think, however, based on the evidence that he intended to hurt her, and he did hurt her; he caused her four months of hospitalization, and I wonder, ladies and gentlemen, if it could happen again."

▉▉▉ Counsel is required to confine his argument to the evidence in the case and to inferences properly to be drawn therefrom, and to avoid appealing to the prejudice of the jury. *State* v. *Levine,* 117 Vt. 320, 326, 91 A.2d 678.

It is contended by the respondent that the above quoted remarks of the State's Attorney which were objected to below were prejudicial. It is here claimed that, in so far as the jury knew, an acquittal by reason of insanity might or could result in a release of the respondent into society where he could shoot Mrs. Bishop again.

It was wrong for the prosecutor to play on the personal fears of the jury by suggesting possible future injury to Mrs. Bishop by her husband in the event of his acquittal.

Objection to the above remarks was seasonably made by the respondent's attorney. In sustaining the objection, the trial court stated: "Yes we think it is objectionable, and the jury will disregard anything in the future."

In its charge to the jury, the court later said: "* * * the arguments of the attorneys and any statements they have made during the course of trial or in their arguments are also not evidence."

It is assumed that the jury followed the instructions given by the trial court and disregarded these remarks made by the prosecuting attorney.

While the comments in question do not meet the standards sanctioned in arguments by counsel, we do not conclude that the appellant's conviction turned in any significant degree on these comments and, consequently, no reversal is required on this claimed assignment of error.

Respondent assigns error in the court's charge on the issue of insanity. It is the law in Vermont that the prosecution had the burden of proving the sanity of the respondent beyond a reasonable doubt.

Respondent has referred to certain portions of the court's charge and claims error. By these isolated references, it is urged that the burden of proof was erroneously placed upon the respondent to prove his insanity.

These portions of the charge were given to assist the jury in distinguishing between sanity and insanity, for the purpose of determining criminal responsibility under the statute. The fault assigned is that the trial court, in the course of each statement of definition, did not refer, every time, to the burden of the State to prove respondent's sanity beyond a reasonable doubt. Such claim is negated by the overall and repeated charge by the court that the burden of proof was so cast upon the State.

Error is not to be read into the charge of a trial judge by isolating small segments of it. It is not to be considered piecemeal, but with an eye on its general content. *State* v. *Blair*, 118 Vt. 81, 97, 99 A.2d 677. Quoting from *In re Moxley's Will*, 103 Vt. 100, at page 114, 152 Atl. 713, "An instruction claimed to be erroneous must be read in the light of what is elsewhere said upon the subject."

As stated in *Fassett* v. *Town of Roxbury*, 55 Vt. 552, at page 556, a charge "should be taken as a whole, and although it may contain some expressions that, taken alone, would be error, yet if as a whole it breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand."

Elsewhere, on the sanity and insanity issues, the application of the test of insanity in criminal cases under 13 V.S.A. section 4801, and the burden of proof, we refer to the following comments contained in the court's charge.

> The question is whether the respondent was or was not legally insane at the time of the commission of the breach of peace, and therefore, responsible or not responsible for his act. On this question, as on all other issues, we have outlined to you, the burden rests upon the State to establish the legal sanity of the respondent beyond a reasonable doubt, as we have explained the term. If you find that the respondent committed the breach of the peace, but failed to find beyond a reasonable doubt that he was legally sane at the time, your verdict must be not guilty by reason of insanity.

We later find the following statement by the court.

> Under the statutory definition, so far as it is applicable here, the burden of proof rests upon the State to prove beyond a reasonable doubt, in order to hold the respondent responsible for criminal conduct, that at the time of such conduct, he did not as a result of mental disease or defect lack adequate capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

Continuing in the charge we find the following:

> . . . did the respondent have such a mental disease or defect on the date alleged, October 4, 1968, that he lacked adequate mental capacity to realize his act was criminal, or to refrain from following his impulse to perform it? . . . the burden is on the State to prove beyond a reasonable doubt that this mental disease or defect did not so exist and operate, and if this burden is not sustained, your verdict should, even assuming you find the respondent committed the said act, be not guilty by reason of insanity.

Near the conclusion of the charge the trial court again called attention to the fact that the burden of proof rested upon the State to establish beyond a reasonable doubt the sanity of the respondent in order to justify a conviction.

A reading of the charge would indicate that standing alone, and out of context, the complained portions of the charge were incomplete and incorrect. Considering the charge in its entirety, and the emphasis which the court correctly placed on the required essentials to justify a conviction, we conclude that the jury was not misled by the errors complained of, nor that prejudicial error appears.

*Judgment affirmed. Let execution be done.*

**Holden, C.J.,** concurring. Since I view the question presented in this appeal somewhat differently from that entertained in the majority opinion, I feel called upon to state the reasons for my concurrence in the result. It doesn't seem to me that in the ordinary case, the uniformed opinion of lay witnesses, that an accused is sane, excludes reasonable doubt in the presence of undisputed and competent expert evidence to the contrary, advanced by a skilled and experienced psychiatrist. See *Isaac* v. *United States,* 109 U.S.App.D.C. 34, 284 F.2d 168, 170; *Bradford* v. *Maryland,* 234 Md. 505, 200 A.2d 150, 17 A.L.R.3d 134 and annotation at 181.

In the present case, however, Dr. Young was of the opinion that it was "possible" that the respondent's mind was governed by an uncontrollable and irresistible impulse at the time of the shooting. In considering the competency of such testimony, reasonable probability is the standard, rather than conjecture or mere possibility. See *Hebert* v. *Stanley,* 124 Vt. 205, 210, 201 A.2d 698, and *Howley* v. *Kantor,* 105 Vt. 128, 133, 163 A. 628. More important, the doctor testified: "It was my impression that he was suffering what we call a dissociated reaction; that is, he was acting out of character with his inner personality, the sort of behavior that one sees when a person isn't really thinking of what he is doing."

The state's attorney then inquired:

Q. Would you accept the definition of dissociation as being a person who functions in a prolonged period of amnesia and then returns to normal as being dissociate reaction during that amnesia period because that part of his personality apparently splits off from the rest of him and operated for awhile independently? Would you accept that definition?

A. Yes, that's a good lay definition.

Q. So in order for Mr. Bishop to have been suffering under dissociate reaction, he would have to have suffered a period of amnesia?

A. Yes.

Q. If, however, Mr. Bishop was able to recall the events preceding, during and after the shooting, he would not be suffering this dissociate reaction?

A. Very unlikely.

It is clear from this that the doctor's opinion, that the respondent was "temporarily insane," was based on his judgment that Bishop suffered from a state of amnesia immediately before and at the time of the shooting. His diagnosis of amnesia was based on the lack of memory reported to him by the respondent during the course of his interview at the State Hospital on October 14, 1968, ten days after the alleged crime.

It appears in the evidence that on the afternoon of the crime the respondent made a voluntary statement of the events which preceded and occurred at the time of the alleged offense. No question is made that the statement was voluntarily given, consistent with the constitutionally protected rights of the accused. At that time the respondent remembered and informed the investigators, in considerable detail, exactly what happened. This included the particular location where he parked his vehicle, that he saw his wife when she left the plant and watched her as she approached his car. He quoted the substance of her conversation:

"She said, 'What the Hell do you want?' And that's when I done it.

Q. And did you walk up to her?

A. No, she walked up to me.

Q. And where was your gun at that time?

A. In my hand.

Q. Did you have the gun concealed before that?

A. No, sir.—

Q. Did you point it right at her? Or put it right in her stomach?

A. Well she was about—she was about two feet from me, so I probably pointed it at her.

Q. How many shots did you fire?

A. One."

There is other evidence in the case to indicate that the respondent had substantial recall of what transpired. In the presence of this testimony it was within the province of the jury to reject the claim of the defense that the respondent experienced a period of amnesia.

Since the doctor's opinion of "temporary insanity" was founded on this premise, the jury had adequate reason to conclude that his testimony on the issue of insanity was not convincing. The same considerations support the trial court's refusal to direct a verdict of not guilty.