## Maria L. Halpern v. Frederick I. Kantor

[388 A.2d 411]

No. 90-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 6, 1978

*Arthur J. O'Dea,* Manchester Center, for Plaintiff.

*Charles R. Eichel,* Manchester Center, for Defendant.

**Barney, C.J.** This is a suit between partners who have had a falling out. The partnership was formed for the purpose of building and selling two residences on separate lots in Londonderry. The arrangement took the form of a written partnership agreement executed by both parties. Before the completion and sale of both of the buildings, difficulties and differences arose. As a consequence suit was brought by the plaintiff seeking recovery in damages for breach of the partnership agreement plus an accounting by the defendant for money received and expended in his "partnership and fiduciary capacities." The defendant filed both an answer in defense of the plaintiff's suit and a cross-claim seeking damages for alleged breaches of the partnership agreement by the plaintiff. To this cross-claim plaintiff filed a denial and the matter went to trial before the court.

The trial court made findings of fact and issued a judgment order allocating partnership liabilities, providing for the division of partnership assets and dissolving the partnership.

Both parties attack the judgment in their briefs and seek entry of a judgment below in favor of themselves in a sum certain. The disparity in their positions exceeds $50,000.

Although the pleadings are not explicit on the point, the parties have both treated the proceedings as one for the dissolution of the partnership. This is basis for the request for an accounting between them, and is reflected in the lower court's order of dissolution.

The provisions of 11 V.S.A. § 1324(a) govern dissolution by court decree at the request of a partner. Although neither the pleadings nor the court's findings, conclusions of law or judgment mention this section, it is of importance since it defines the rights of the partners under 11 V.S.A. § 1330, relating to the proper application of partnership property as between the parties. The court did act under 11 V.S.A. § 1332 in making its order, but that section merely sets out priorities as between claimants, and does not touch the issue of the rights of partners upon dissolution wrongfully caused, set out in 11 V.S.A. § 1330(b). Thus we are confronted at the outset with a question as to whether all of the issues in the case have been disposed of below in accordance with statutory commands.

So that the position of the parties may be made clearer, a brief summation of the facts is required. The written partnership agreement relating to the two house construction was executed in May of 1972. The lots had already been acquired, with title in the plaintiff. The defendant had paid $600 down, the plaintiff paid $2300 at the time of closing, and the balance was financed by a purchase money mortgage held by the sellers.

The partners then received a construction loan of $44,800 to cover both houses. This money was advanced as construction went along and had been fully available before this lawsuit.

The partnership agreement made the defendant the general manager of the project with a $500 fee payable to him for the work for each house. He was also to do the electrical and plumbing work himself and be reimbursed therefore. He proceeded to contract for the rest of the construction, and the two houses were built in the summer and fall of 1972.

The partnership contract provided that the defendant "shall not, however, without the express consent of Halpern contract for services or materials, or otherwise, as a partner of the venture, incur costs for which the partnership shall be liable, in an amount to exceed the aggregate amount of $28,000.00." The defendant concededly violated this provision, but contended that he thought the limitation applied to each house. On the other hand, the plaintiff was under the mistaken impression that both houses could be built for not more than $28,000.00. In any event, the court below found the defendant to be in violation of this provision of the partnership agreement.

In October of 1972, the plaintiff discovered the overspending and took and retained possession of the checkbook and invoices. As a result the defendant had to stop his work on the second house, identified as K2. Plaintiff paid to have the construction finished. A freeze-up problem in the water system of the first house, K1, required some repairs which the plaintiff also paid for. The total expenditure for both obligations came to $5,437.66.

At the time of the freeze-up there was a buyer interested in K1, the first house, at a price of $35,500.00, but the water system problem prevented the sale from being closed. The second house, "K2," was sold in 1975 for $30,500.00. The proceeds were applied on the bank mortgage and outstanding invoices. At the time of the decision below K1 remained unsold.

During the period that the houses were still not sold they were rented. The rent has gone to the plaintiff and amounts to $5,775.00. At one time K2 was damaged by fire and vandalism before it was sold. The plaintiff received $5,000.00 in insurance proceeds, which the court found was expended on the house to make it habitable. Taxes and electric power charges have been incurred.

The facts also disclose that the defendant, in 1972, drew the last of the mortgage advance from the bank. This amounted to $4,976.61, and $2,469.68 was applied on back mortgage payments, $2,211.93 was applied on outstanding invoices and $300.00 went to the defendant. The defendant acknowledged that he had used $344.35 of partnership funds

for personal use. He has never been paid for his plumbing and electrical services, amounting to $3,000.00.

According to the judgment order, the plaintiff reimbursed herself from partnership funds for the money she put in to purchase the lots. This amounted to $2,300.00 plus interest. Although, under the agreement, title to the lots was then to be transferred to the partnership, this was not done.

The trial court, in trying to make orderly disposition of all this drew up an order for judgment. In brief, it ordered repayment first to the partnership creditors including mortgage holders. It then credited the plaintiff with the cost of making the properties habitable in the amount of $5,437.66, already noted. It gave the defendant credit for supervising construction of the two houses at $1,000.00, and for the plumbing and repair work at $3,000.00. It then ordered the repayment to the plaintiff of her $2,300.00 capital investment, noted as already accomplished, and provided for repayment to the defendant of the $300.00 balance remaining on his $600.00 initial advance. The order went on to say that the rental income of $5,775.00 received by the plaintiff, and the $344.35 representing the personal obligation of the defendant should be paid in to be available to apply against partnership obligations. It further provided that the partnership would be dissolved upon the carrying out of these directions and the first provision of the order.

That provision reads as follows:

> "1. That the house known as K-1 and the land on which it sits be listed for sale at a price of Thirty Thousand Six Hundred Thirty Dollars ($30,630.00), or at such other price as the parties may agree upon."

There has been some suggestion that K1 has been lost to the parties by foreclosure, has been resold for some $43,000.00, or in some fashion had its relationship to the partnership changed since the court hearing. This serves only to point up the problem with the judgment order. It was based on the contingency of sale of the property, rather than finally aligning the interests of the parties. The contingency was of a kind to make it impossible of enforcement, since it could not become operative until sale of the property, although the

order went no further than to require that the property be listed. This is its defect. See *Lash Furniture Co.* v. *Norton,* 123 Vt. 226, 228, 185 A.2d 734 (1962).

The parties, by suit and countersuit, both contend that they are entitled to damages against the other. Although, as we have seen, a violation is noted in the findings, it is not recognized in the judgment order, or its consequence anywhere explained. We concur with both parties that the judgment must be reversed, but must say that its amount can be determined only by rehearing below in the light of the governing law.

*Reversed and remanded.*