537 A.2d 1372

**COMMONWEALTH of Pennsylvania**

v.

**Nelson Charles MIKESELL, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1987.

Filed Feb. 4, 1988.

210

Charles E. Boyle, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com.

Before BECK, JOHNSON and HESTER, JJ.

212

HESTER, Judge:

This is an appeal from the judgment of sentence imposed on February 8, 1982, following appellant's conviction of two counts of first degree murder by a jury. Appellant alleges numerous trial errors, fourteen instances of trial counsel's ineffectiveness, and a claim that imposition of consecutive life sentences is a violation of due process of law. We reject appellant's claims of error, and affirm the judgment of sentence.

On the night of September 18, 1974, appellant shot his estranged wife, Marilyn Mikesell, her companion, Joseph Malone, and his three-year-old daughter, Chris Mikesell, killing the two adults and wounding his daughter Chris. The shooting occurred outside the home of appellant's wife when the three victims arrived at the residence a few minutes before midnight. Police arrested appellant at his home an hour after the murders, gave him *Miranda* warnings, and took him to police headquarters.

At the police station, appellant was again advised of his *Miranda* rights, which he waived. He was interrogated from 2:30 to 4:00 a.m. on September 19, 1974, and denied any involvement in the crimes. He was then arraigned before a deputy coroner, where he asserted his right to an attorney. Following his arraignment, he was held in jail. Several hours later, at approximately 8:00 a.m., appellant told the police he wanted to make a statement. He was again advised of his rights, then gave an inculpatory statement which was tape recorded.

Prior to trial, appellant moved to suppress his confession and other physical evidence. Following a lengthy hearing on March 10, 1975, the motion was denied. Appellant was tried before the late Judge Arthur Wessel and a jury and was convicted of two counts of first degree murder on March 14, 1975. Post-trial motions were assigned to the late Judge Albert J. Fiok due to the death of Judge Wessel. Judge Fiok granted a new trial on the basis of improper jury instructions at the first trial.

On May 19, 1976, a second jury trial commenced before the Honorable Joseph H. Ridge. The jury returned a guilty verdict on two counts of first degree murder on May 25, 1976. Appellant's post-trial motions were denied, and Judge Ridge imposed two concurrent life sentences on August 6, 1976.

Appellant took an appeal, and on December 23, 1977, the Supreme Court of Pennsylvania reversed the judgment of sentence and remanded for a third trial. *Commonwealth v. Mikesell*, 475 Pa. 589, 381 A.2d 430 (1977). The court held that improper closing argument by the prosecutor had the unavoidable effect of creating in the jurors bias and hostility towards Mikesell and preventing an objective verdict. *Id.*, 475 Pa. at 595, 381 A.2d at 434.

Following remand of the record, appellant moved to quash the indictment, alleging that the prosecutor's misconduct in the second trial was calculated to provoke a mistrial, and that retrial would constitute double jeopardy. The court heard argument on the motion on April 10, 1978, and subsequently denied the motion on May 19, 1978. Appellant appealed from the denial of his motion, and this court affirmed on October 26, 1979. Appellant's petition for allowance of appeal was denied by the supreme court on March 5, 1980, and the record was returned to the clerk of courts on March 19, 1980.

Prior to trial, appellant moved to dismiss the charges for violation of Pa.R.Crim.P. 1100, which requires that a new trial be commenced within 120 days after an appellate court remands the record for retrial. The trial court denied the Rule 1100 motion on June 27, 1980. Following several defense-requested continuances, appellant's third trial commenced on May 12, 1981, before the Honorable Loran L. Lewis and a jury. The jury found appellant guilty of two counts of murder of the first degree. Post-trial motions were denied, and on February 8, 1982, Judge Lewis sentenced appellant to consecutive terms of life imprisonment. No appeal was taken in 1982.

Subsequent Post Conviction Hearing Act (PCHA) proceedings, reviewed twice by this court, resulted in the filing of post-trial motions nunc pro tunc on July 1, 1986, as well as this appeal from judgment of sentence which was filed on December 8, 1986, following the denial of post-trial motions.

Appellant raises seven issues: 1) whether the trial court erred in refusing to suppress his confession and other physical evidence; 2) whether the trial court erred in denying his motion to dismiss under Rule 1100; 3) whether the trial court erred in refusing to grant a mistrial when the prosecutor's opening statement contained an allegedly prejudicial appeal to the emotions of the jury; 4) whether the court erred in permitting hearsay testimony from a Commonwealth witness; 5) whether the court erred in refusing to grant a mistrial after the prosecutor mentioned the "first trial" of appellant; 6) whether appellant was denied effective assistance of trial counsel; and 7) whether the court violated the double jeopardy clause when it imposed a more severe sentence following appellant's successful appeal of his second conviction.

Appellant's first argument is that the trial court violated the holding of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), when it refused to suppress his confession. Appellant asserts that during his preliminary arraignment before deputy coroner Phillips at 6:30 a.m. on September 19, 1974, he requested that an attorney be provided. N.T., 3/10/75, at 36–39. No counsel was provided, and appellant alleges that the police continued to interrogate him until appellant gave a tape recorded confession shortly after 8:00 a.m. the same morning. *Edwards v. Arizona* stated:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having

expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386 (footnote omitted).

■ We reject appellant's argument. The record clearly supports the trial court's conclusion that appellant's confession followed his request to make a statement about what happened, a conversation he initiated without any prompting by the police N.T., 3/10/75, at 9–16. There was thus no violation of *Edwards,* and the trial court correctly denied appellant's suppression motion.

The second issue is whether there was a violation of the 120 day requirement of Rule 1100(e)(2) following appellant's appeal from his second conviction. Following the grant of a new trial by the Pennsylvania Supreme Court on December 23, 1977, the record was remanded to the common pleas court on January 11, 1978. Trial should have commenced on or before May 11, 1978, pursuant to Rule 1100(e)(2). The Commonwealth filed its first petition for extension on June 20, 1978, more than a month after trial should have begun. Although appellant's third trial did not take place until May, 1981, the only period at issue is the time from April 10, 1978, to June 20, 1978.

■ On April 10, 1978, the trial court heard argument on appellant's pretrial motions to suppress, to quash the indictment, and for recusal of the trial judge. Appellant was present at the argument, when his attorney, John H. Pope, informed the court that he intended to appeal to the supreme court if any of the several motions were denied. Appellant knowingly waived his rights under Rule 1100 to obtain appellate review prior to trial. The following colloquy took place on the record:

> MR. POPE [DEFENSE COUNSEL]: Well, all right. I believe, we have discussed, Mr. Mikesell, that in all probability the motion to quash would not be granted by

court at this level and that there would be an appeal taken to Supreme Court. You and I discuss that?

THE DEFENDANT: Yes, we have.

MR. POPE: And you were aware that there was no possibility of your actual trial commencing within the hundred and twenty days. Is this right?

THE DEFENDANT: Right.

MR. POPE: So that, in effect, you knew that a continuance in some nature, either by this court or by the fact of an appeal was pending before the Supreme Court, will result in your trial not occurring within the prescribed hundred and twenty days?

THE DEFENDANT: Right, I understand that.

MR. POPE: And you were in agreement with that at that time and agreement occurring?

THE DEFENDANT: Yes, sir.

MR. POPE: Now, is there any change in your thoughts since we last discussed that?

THE DEFENDANT: Well, when this appeal goes up, if the court does deny it, then that is—is that like an automatic continuance? Is this what this is on the issue to quash?

MR. POPE: Obviously, you cannot have the trial until the court decides whether you can have it or not.

THE DEFENDANT: The Supreme Court?

MR. POPE: The Supreme Court, yes.

The Supreme Court, assuming the lower court denies the motion and the Supreme Court affirms that denial, then it would be remanded back again and there would be another hundred twenty days within which to try you.

THE DEFENDANT: Yes. Okay.

THE COURT: All right. Do you believe you understand now?

THE DEFENDANT: Yes, Your Honor, I do.

N.T., 4/10/78, at 8–10. Further questioning by the assistant district attorney, Howard K. Hilner, made it abundantly

clear that appellant agreed to an indefinite waiver of Rule 1100 to allow time for an appeal.

MR. HILNER: Yes.

I want to direct some questions to Mr. Mikesell on this point and just on this point alone.

Mr. Mikesell, you understand that the Constitution of the United States and also of Pennsylvania guarantees you a prompt and speedy trial?

THE DEFENDANT: Yes, I do.

MR. HILNER: Do you understand that in reference to the third trial of this matter, these homicide cases and the other crimes that are periphery to that occurrence, that the Commonwealth is prepared to try you right now? You understand that?

THE DEFENDANT: Yes, sir.

MR. HILNER: That to permit your counsel to explore these legal possibilities on your behalf and for him to prepare a brief and also for it to be considered by the court, it is necessary for you to waive your right for a speedy trial to give him sufficient time to act on your behalf. You understand that?

THE DEFENDANT: Yes, sir, I do.

MR. HILNER: This is what you want him to do, to protect your rights and represent you in the best possible way, you want him to take this additional time. Is that right?

THE DEFENDANT: Yes, sir.

MR. HILNER: Now, understand this, also, Mr. Mikesell, that we are talking only about lower court arguments and that we are not talking about appeals to the Supreme Court because appeals to the Supreme Court are guided by the timing given them by the court. We can not control the Supreme Court. They set the dates for arguments, and they take as much time as they think appropriate to reach a decision.

Now, we can make no predictions on how long that will take. Now, that is talking just simply appeal to the Supreme Court.

THE DEFENDANT: I understand that.

*Id.* at 11–13.

The parties briefed the issues which had been argued on April 10, 1978, and the motions were denied on May 19, 1978. Appellant filed a notice of appeal to the supreme court on June 19, 1978. The following day, the Commonwealth filed a petition for extension under Rule 1100, which was granted the same day. Due to appellant's waiver, we hold that the petition was seasonably filed and was properly granted.

■ Appellant's third argument is that the prosecutor's opening statement was improper and included prejudicial remarks appealing to the emotions of the jurors. He objects specifically to the statement that the evidence would prove that appellant waited in his car for the victims to arrive, then left the scene in a hurry after he shot the victims. Appellant argues that the evidence adduced at trial failed to support these assertions. Upon a careful review of the record, we reject appellant's argument, for the record contains substantial evidence from which the jury could conclude that appellant lay in wait for the victims, then fled hurriedly after the killings.

Commonwealth witness Steven Gregor, Marilyn Mikesell's neighbor, testified that he heard noises which sounded like firecrackers, looked out the window, and within seconds, saw a big blue car spinning its tires in its haste to leave the scene. N.T., 5/12–22/81, at 46–55. Another neighbor, James Hubert, testified that when he arrived home on the night of the murders, he saw a big, dark car stopped at the scene, apparently waiting for someone. Hubert parked his car, and a minute or two later, as he was entering his house, heard sounds which sounded like firecrackers, then saw the waiting car screech away at a high rate of speed. *Id.* at 122–31. Another neighbor, Thomas Kunsak, testified that shortly before midnight, while walking his dog, he saw a dark colored Buick Electra parked at the intersection where the killings occurred. He returned home, and minutes later heard a succession of shots or

bangs, went back outside, and found the victims lying on the sidewalk. *Id.* at 145–58. Though none of the witnesses identified appellant as the occupant of the Electra, there was abundant circumstantial evidence from which the jury could infer that appellant lay in wait for his victims, as the prosecutor had argued in his opening statement.

■ The fourth issue is whether the court erred in permitting hearsay testimony from Commonwealth witness Alverda Sutton. Mrs. Sutton, Marilyn Mikesell's mother, testified about her daughter's relationship with appellant at the time of the killings. She stated:

> Well, she said that he told her, while they were separated, until they get the divorce, he better never catch her with anybody else, that you better look over your shoulder if he ever catches her with anybody else, you know, that it would be too bad for her.

*Id.* at 38. Appellant argues that the statement was inadmissible hearsay. We disagree. The testimony was probative of appellant's ill will, motive, or malice towards his wife and was therefore admissible as an exception to the hearsay rule. *Commonwealth v. Gibson*, 363 Pa.Super. 466, 526 A.2d 438 (1987).

The fifth issue is whether the trial court erred in refusing to grant a mistrial when the prosecutor referred to appellant's first trial. John Gualtieri, a Commonwealth witness at the first trial, died before the third trial. His transcribed testimony from the first trial was read into evidence at the third trial. In laying the foundation for this testimony, the prosecutor stated:

> MR. DIXON: Away from the transcript now, I've handed this witness the same Commonwealth Exhibit A–4 that was introduced at the first trial.
>
> THE COURT: All right.

*Id.* at 229. Appellant argues that the prosecutor's statement breached his duty of fairness and was so prejudicial as to warrant a mistrial under *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975).

■ The record does not support this argument. Following the prosecutor's reference to the first trial, defense counsel moved for a mistrial and the court entertained argument on the motion in chambers. Defense counsel acknowledged, "I'm certain that this was inadvertent...." N.T., 5/12–22/81, at 232. The record clearly supports the conclusion that the reference was inadvertent so that no breach of the prosecutor's duty of fairness is in question. The question is whether the remark was so prejudicial as to deprive appellant of an impartial jury. *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984). The court considered the fact that the mere knowledge that a prior trial had taken place would not inform the jury of a prior conviction, as the prior trial might have ended with a hung jury or a mistrial. N.T., 5/12–22/81, at 234–39. The decision to grant or deny a mistrial is a discretionary one, and will not be reversed in the absence of a manifest abuse of discretion. *Commonwealth v. Stoltzfus, supra.* We hold that the decision to deny a mistrial under these circumstances did not amount to an abuse of the trial court's discretion.

The next issue is whether appellant was denied his constitutional right to effective assistance of counsel at trial. Appellant argues fourteen specific instances of alleged ineffectiveness which we will address seriatim.

When reviewing the effectiveness of counsel, we determine first whether the underlying claim has merit. If it does, we then ask whether counsel's handling of the matter had some reasonable basis designed to effectuate his client's interests. Counsel is not ineffective unless there was no reasonable basis for the action, and counsel may not be faulted for failing to take baseless or meritless action. Finally, a finding of ineffectiveness requires a showing that the course of action pursued by counsel was prejudicial to the defendant.

*Commonwealth v. Blagman*, 350 Pa.Super. 367, 371, 504 A.2d 883, 885 (1986) (citations omitted); *see also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Buehl*, 510 Pa. 363, 378, 508 A.2d 1167, 1174

(1986). Furthermore, appellant carries the burden of proving his counsel's ineffectiveness. *Commonwealth v. Durah–El*, 344 Pa.Super. 511, 496 A.2d 1222 (1985).

Appellant first claims that his defense counsel was ineffective for failing to object to the prosecutor's opening remarks that the Commonwealth would prove that appellant lay in wait for the murder victims. We have discussed this statement and concluded that it was proper opening commentary. Any objection thereto would have been meritless, and counsel cannot be deemed ineffective for failing to raise a meritless objection.

Appellant claims that counsel was ineffective for characterizing the hearsay testimony of Mrs. Sutton already quoted, *supra* at 1377, as a threat by appellant. This argument is frivolous. The statement was so obviously threatening that to call it a threat could not possibly have been prejudicial to appellant. It would have been difficult to refer to the statement as anything other than a threat.

■ Appellant next alleges that trial counsel was ineffective for referring twice to prior testimony of prosecution witnesses. This argument is frivolous, for in both instances defense counsel was attacking the credibility of the witnesses on cross-examination by establishing inconsistencies between their prior testimony and their testimony at the third trial. N.T., 5/12–22/81, at 73, 111–12. This was clearly a reasonable defense tactic. *See Commonwealth v. Pierce, supra.*

Appellant claims that counsel was ineffective for failing to object to testimony and photographs linking appellant's Buick Electra to the scene of the crime. We have discussed this evidence previously, and have concluded that even though no witness positively identified appellant as the driver, the circumstantial evidence was clearly admissible. Any objection to its admission would have been meritless.

■ The fifth allegation of ineffectiveness is a reiteration of counsel's failure to prevent the jury from learning that the 1981 trial was not appellant's first trial, with a specific

challenge to his decision to forgo a cautionary instruction following the prosecutor's reference to the "first trial." The record, however, clearly demonstrates that the decision was reached after extensive discussion in chambers, N.T., 5/12–22/81, at 232–47, that the decision was reasonable trial strategy, and that appellant personally participated in the decision. *See Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979).

■ Appellant next contends that counsel was ineffective with respect to his cross-examination of Detective Swearingen. On direct examination, Commonwealth witness Swearingen explained where he found spent shell casings and spent pellets at the murder scene and in appellant's automobile. Appellant claims that it was defense counsel's cross-examination of Swearingen which first connected the casings found at the murder scene with appellant's pistol. The record clearly establishes, however, that appellant could not have been prejudiced by Swearingen's testimony. The subsequent testimony of criminalist Robert Levine proved conclusively that the ammunition found at the scene and in appellant's automobile had been fired from appellant's automatic pistol. Appellant is not entitled to relief. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1980).

Appellant challenges defense counsel's failure to impeach police lieutenant Moffatt who testified that he did not remember appellant requesting an attorney at his preliminary arraignment. N.T., 5/12–22/81, at 441. Appellant again fails to demonstrate how he was prejudiced. He presented his contradictory version of how his statement had been obtained, and the jury was appropriately instructed to consider the voluntariness of appellant's confession. N.T., 5/12–22/81, at 832–33.

Appellant claims that trial counsel was ineffective for failing to seek a second suppression hearing based on testimony by appellant's friend, Anthony Cuda, that appellant was a "different person altogether" when taking pills, so that Cuda disbelieved what appellant said when he was

under the influence. *Id.* at 481. This is a meritless assertion of ineffectiveness. Witness Cuda also testified that he did not know whether appellant had taken any pills the evening before appellant was arrested, *id.*, so his testimony would not have justified a new suppression hearing.

Appellant's ninth allegation of ineffectiveness is that trial counsel demurred to the prosecution case, then entered a defense, thus waiving appellant's right to appeal the court's denial of the demurrer. Appellant fails to suggest any possible prejudice this decision caused him. Trial counsel did not waive a challenge to the sufficiency of the evidence, yet appellant does not challenge the sufficiency of the evidence on this appeal, implying that an appeal of the denial of the demurrer would have been a baseless action.

Appellant claims that defense counsel was ineffective for permitting appellant to demonstrate in court how the shootings occurred. It is clear, however, that once appellant had admitted the shootings and claimed that they were accidental, it was reasonable trial strategy to have appellant demonstrate his version of the events.

Appellant's eleventh allegation of ineffectiveness is a reiteration of his second, which we have addressed *supra* at 1378.

Appellant next alleges that counsel was ineffective for stating in his closing argument that the jury "almost must draw" the conclusion that appellant's wife, Marilyn, was afraid of her husband because witness Schindler testified that Marilyn had changed her locks shortly before her murder. N.T., 5/12–22/81, at 762. When taken in context, however, the statement represents the reasonable trial strategy of trying to anticipate the Commonwealth's argument on the Schindler testimony. The statement appellant objects to was followed immediately by this argument:

> I suggest to you that there is another reason why Marilyn Mikesell wanted the locks changed. If you are separated from your spouse and had another person visiting before the divorce, would you not perhaps have the locks changed so you wouldn't get caught? Not because you

were afraid, but because you were afraid to get caught, not physically afraid of your spouse. I don't know. I've never been in that situation. It's something to think about though, isn't it? The Commonwealth is going to ask you to do a lot of conjecturing, they're going to ask you to accept some things based on what probably happened. I suggest to you that it is as probable that those locks were changed because of fear of getting caught as it was for fear of any retaliation from a jealous spouse.

*Id.* at 762–63.

Appellant's next allegation of ineffectiveness concerns defense counsel's failure to object to the prosecutor's closing argument which was allegedly inflammatory and which allegedly argued facts not in evidence. The substance of this argument has been addressed, *supra* at 1376–1377. We repeat that the evidence supported the prosecutor's summation, and it would have been meritless to object to the closing argument.

Appellant's last allegation of ineffectiveness is that trial counsel failed to object to the trial court's allegedly erroneous instruction: "Now, the law says the fatal use of a deadly weapon against a vital part of another's body when it is established as a fact warrants an inference that the act was done with the specific intent to take life." N.T., 5/12–22/81, at 810. Appellant argues that the charge should have been: "The specific intent to kill necessary to support a conviction of first degree murder may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being," citing *Commonwealth v. Culmer*, 463 Pa. 189, 344 A.2d 487 (1975). Appellant could not possibly have been prejudiced by the court's correct statement of the law, worded slightly differently from appellant's paraphrase of *Culmer, supra.* Counsel was not ineffective for failing to object to the charge. *Commonwealth v. Pierce, supra.*

The final issue raised by appellant is a challenge to the legality of the sentence imposed on February 8, 1982,

following his third trial.[1] He argues that *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), prohibits imposition of a more severe sentence following a remand for a new trial unless the more severe sentence is based on "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Following appellant's second trial, Judge Ridge had imposed a sentence of two life terms to run concurrently. Appellant successfully appealed, resulting in his third trial. Judge Lewis imposed a sentence of two life terms to run consecutively, and the only reason stated was that "two lives were taken by the defendant," trial court opinion, 11/10/86, at 3, a reason obviously not based on conduct of the defendant which occurred after the original sentencing.

We hold, however, that appellant is not entitled to relief. The United States Supreme Court recently reinterpreted its holding in *North Carolina v. Pearce*. In *Texas v. McCullough*, 475 U.S. 134, 137–40, 106 S.Ct. 976, 978–80, 89 L.Ed.2d 104, 110–12 (1986), the Court stated:

> In *North Carolina v. Pearce, supra*, the Court placed a limitation on the power of a sentencing authority to increase a sentence after reconviction following a new trial. It held that the Due Process Clause of the Fourteenth Amendment prevent increased sentence when that increase was motivated by vindictiveness on the part of the sentencing judge.... Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial. The *Pearce* requirements thus do not apply in

---

1. Appellant does not argue, as the dissent suggests, that the sentencing judge abused his discretion by failing to state adequate reasons on the record for imposing an enhanced sentence. He argues, instead, that imposition of the more severe sentence constitutes double jeopardy, and violates *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Moreover, he does not seek resentencing accompanied by a statement of reasons, but argues that he is entitled to reimposition of his original concurrent life sentences. Brief for Appellant at 50–53.

every case where a convicted defendant receives a higher sentence on retrial.

. . . .

The presumption [of vindictiveness] is also inapplicable because different sentencers assessed the varying sentences that McCullough received. In such circumstances, a sentence "increase" cannot truly be said to have taken place.

Following appellant's successful appeal, he was tried before, and sentenced by, a different judge than the one who had imposed the original sentence. *McCullough, supra,* makes it clear that no presumption of vindictiveness applies in these circumstances. In the absence of a presumption, "the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States,* 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424, 433 (1984). Appellant has not attempted to prove actual vindictiveness, and nothing in the record suggests that Judge Lewis was motivated by vindictiveness. We therefore hold that no due process violation occurred and that appellant is not entitled to resentencing.

Judgment of sentence affirmed.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I join in the majority's insightful analysis of appellant's allegations of trial errors and counsel ineffectiveness.

I dissent from the majority's limited analysis of appellant's sentencing issue: whether the lower court erred in imposing a more severe sentence on Mikesell and declining to modify that sentence on reconsideration. The majority considers appellant's challenge as a challenge to the legality of sentence. I disagree. Legality of sentence relates to the court's power to impose a particular sentence. The defect in an illegal sentence "will go to the power of the court to impose sentence." *Commonwealth v. Tolassi,* 303 Pa.Super. 177, 181, 449 A.2d 636, 638 (1982). Since the court had

the power to impose concurrent sentences under the Code, there is no question that the sentence was legal.

The challenge applies to a discretionary aspect of sentencing: i.e., upon resentencing, whether the court failed to give adequate reasons for imposing consecutive rather than concurrent sentences. I find that the court failed to give adequate reasons for imposing two consecutive life sentences.

Following his second conviction, appellant was sentenced to two concurrent life sentences. After a successful appeal, he was again convicted in a third trial. The sentencing judge, who was different from the previous sentencing judge, increased appellant's total sentence by imposing two consecutive life sentences. *See Commonwealth v. Hermankevich*, 220 Pa.Super. 197, 286 A.2d 644 (1971). Appellant now claims the judge erred in imposing consecutive sentences instead of reimposing concurrent sentences. In his argument, appellant specifies that, "since no reasons affirmatively appeared in this Court's enhanced sentence, Mikesell applied for modification believing the sentence was in error." His motion to modify sentence states that no facts appear of record indicating why the defendant was given an increased sentence after this third trial. On appeal, his allegation of error is premised on the argument that the new sentencing judge abused his discretion by not stating on the record reasons for the enhanced sentence.

A challenge to the adequacy of a statement of reasons is an appeal of a discretionary aspect of sentencing. *Commonwealth v. Osborn*, 364 Pa.Super. 505, 520, 528 A.2d 623, 630 (1987). The right to appeal from a discretionary aspect of a sentence is not absolute. In *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), the Pennsylvania Supreme Court held that such an appeal should comply with the requirements of both Pa.R.A.P. 2119(f) and section 9781(b) of the Sentencing Code, 42 Pa.Cons.Stat.Ann. § 9781(b) (Purdon 1982). Appellant's brief failed to raise this sentencing issue properly pursuant to Pa.R.App.P. 2119(f). However, this court can overlook this deficiency

because the Commonwealth is silent as to this defect. *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (en banc).

Before considering the merits of appellant's challenge, the reviewing court must consider whether appellant has raised a substantial question under the Sentencing Code as a whole. *Commonwealth v. Krum*, 42 Pa.Cons.Stat.Ann. § 9781(b). Failure to state adequate reasons at an initial sentencing hearing raises a substantial question, *Commonwealth v. Lapcevich*, 364 Pa.Super. 151, 155 n. 2, 527 A.2d 572, 573 n. 2 (1987), because the Sentencing Code requires the sentencing judge to place on the record at the hearing reasons for the sentence imposed. 42 Pa.Cons.Stat.Ann. § 9781(b), *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), Pa.R.Crim.P. 1405.

The requirement to provide adequate reasons also applies to subsequent resentencing hearings. *Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115 (1987); therefore, I conclude that appellant's challenge to the adequacy of reasons on resentencing raises a substantial question.

The importance of requiring the judge upon resentencing to state adequate reasons on the record is brought into sharper focus when the applicable United States Supreme Court precedents are considered. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) established a presumption of vindictiveness when an appellant received a harsher sentence upon retrial after an appeal. This presumption assured not only the actual absence of retaliatory motivation but also the absence of the appearance of retaliatory motivation. *Pearce* also required that reasons for a more severe sentence appear on the record, "so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." More recently, *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) modified *Pearce* by holding that the *Pearce* presumption was not applicable where the resentencing judge was different from the original judge. *McCullough* did not specifically address the *Pearce* require-

ment that reasons be placed on the record where the sentence is increased.

If we assume, arguendo, that the instant case does not carry with it the *Pearce* presumption of vindictiveness,[1] then it is all the more important that judges commit their reasons on the record in order to make clear that the judge was not motivated by vindictiveness but had sound reasons for the harsher sentence imposed. A defendant should not forgo his legitimate right of appeal because he fears that if he prevails on appeal and is retried, he will be exposed to a harsher sentence without good reason. Such a situation would chill a defendant's decision as to whether to pursue an appeal.

Therefore I would review the merits of the adequacy of the statement of reasons. At the first day of the resentencing hearing, the judge indicated his intention to impose consecutive life sentences. When told that Judge Ridge, the previous sentencing judge, had imposed concurrent sentences, the sentencing judge stated:

I'm going to find out what the situation is. I'm going to ask Judge Ridge and we'll do what he did.... I think we better have [appellant] come back for sentence because if Judge Ridge said one thing, I got to do the same thing. I feel I should do it anyway.

N.T. Feb, 5, 1982 at 7. On the second day of hearing, the judge stated,

"Well, we consulted with Judge Ridge. He gave two life sentences. One he didn't specify. One was to be concurrent to the other. So, we'll have to sentence him consecutively.

N.T. Feb. 8, 1982 at 8–9. The sentencing judge places no further statement of reasons on the record for imposing consecutive sentences.

In his subsequent opinion of November 10, 1986, denying post-trial motions, the sentencing judge states: "The impo-

---

**1.** It is not at all clear whether under state constitutional law the attenuated standard of *McCullough* would prevail over the stricter standard of *Pearce.*

sition of consecutive life sentences was not inadvertant. This court imposed such a sentence because two lives were taken by the defendant." The adequacy of this brief subsequent explanation is not at issue. An adequate statement of reasons must be placed on the record at the time of sentencing. Pa.R.Crim.P. 1405.

Here the resentencing judge failed to provide on the record that, in resentencing appellant, he did so in accordance with the standards established by the Code. In the final analysis, there is an unexplained imposition of consecutive sentences.

Therefore I would remand for resentencing.