## State of Vermont v. Robert Lyle Percy

[595 A.2d 248]

No. 88-438

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed October 5, 1990

Motion for Reargument Denied May 13, 1991

*Jeffrey L. Amestoy*, Attorney General, and *David E. Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant appeals his conviction, after a retrial by jury, of sexual assault in violation of 13 V.S.A. § 3252. We affirm.

Defendant raises five claims on appeal: (1) that the trial court's instruction that the jury had a "duty to reconcile conflicting testimonies" violated defendant's right to due process of law; (2) that the court erred in refusing to suppress a photograph of defendant obtained through a nontestimonial identification order; (3) that the court erred in excluding defendant's expert evidence on the reliability of eyewitness identification; (4) that he was denied a fair trial by the trial court's failure to excuse a potential juror for cause; (5) that the court's imposition of a greater sentence following retrial violated his right to due process of law.

On December 7, 1980, the victim in this case was abducted and raped. Two weeks later, defendant was charged with sexual assault and kidnapping. A jury trial began October 29, 1981. In that trial, defendant claimed he suffered from post-traumatic stress disorder (PTSD) resulting from his military service in Vietnam, and that during the assault, he had experienced a PTSD-induced flashback that caused his actions on the evening of the crime. The jury returned verdicts of not guilty on the charge of kidnapping and guilty on the charge of sexual assault.

Approximately four years later, in *State v. Percy*, 146 Vt. 475, 507 A.2d 955 (1986), this Court reversed the conviction and remanded for a new trial. The Court held that the cumulative effect of two errors had deprived the defendant of a fair trial. The first error was the admission into evidence of a State expert witness's testimony that defendant's claim of consent and amnesia was characteristic of rapists. The second error was the prosecutor's closing remark suggesting that defendant would go free if he were found not guilty by reason of insanity.

Defendant's second trial for this offense began May 9, 1988. Unlike the first trial, the defense made no claim of insanity, but argued instead that the victim mistakenly identified defendant as the rapist. On May 13, 1988, the jury returned a guilty verdict, and this appeal followed.

At trial, the victim testified that on the night of the assault, she left work and was driving home on Route 12 between Elmore and Worcester when a person on the side of the road fell over in front of her car. She braked, the pedestrian opened the door, and, with his right hand in his pocket, said, "I have a gun, this is a robbery, do as you're told and nothing will happen." He ordered her to drive to a dead-end road where he raped her.

During the drive, the man extinguished a cigarette he had been smoking on the passenger side of the car, burning a hole in the carpet. After the assault, the man handed the victim a lit cigarette. She testified that she handed it back to him, but did not remember whether she put the cigarette to her lips, or what the rapist did with the second cigarette after he smoked it. However, she was certain he did not open the car door or the window to throw it out. The cigarette was a Camel nonfilter. A Camel nonfilter cigarette butt retrieved from the driver's side of the car showed secretions of a person with blood type B. Defendant's blood type was O; the victim's was type B.

The victim testified that the assault occurred over approximately an hour, and that during that time, she was able to see her attacker's face clearly several times, illuminated by lights in the car's interior or ambient light from other automobiles. She described his face as "inches" away from hers, and stated that "I was face to face with him throughout most of it."

After the rape, the assailant ordered the victim to drive back to Route 12 where he left the car. The victim, who stressed during the trial that her assailant's face was "engrained" in her memory, worked with a police artist to create a sketch of her attacker.

When the sketch was circulated, Mr. Percy was identified as bearing a resemblance to the drawing. Thereupon, the main investigating officer, Mr. Williamson, obtained a nontestimonial identification order and on the same day drove to the garage where Mr. Percy worked, read him the order, and took him to the station to be photographed. The photograph obtained was

used in a photo array from which the victim positively identified defendant. The victim stated that her recollection came "[f]rom spending an hour in my car with him."

## I.

Defendant claimed that the trial court's jury instructions were flawed because the court told the jury it had a duty to reconcile conflicting testimony. He argued that the defense in this case hinged on the inability to reconcile the victim's identification of defendant with the "hard scientific evidence" that the cigarette butt found in the victim's car contained secretions inconsistent with defendant's blood type. According to defendant, when the jury was instructed that it had a duty to reconcile conflicting evidence, it was in effect instructed to accept the prosecution's theory, which reconciled the conflicting evidence.

"[A] charge 'should be taken as a whole, and although it may contain some expressions that, taken alone, would be error, yet if as a whole it breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand.'" *State v. Bishop*, 128 Vt. 221, 230, 260 A.2d 393, 399 (1969) (quoting *Fassett v. Town of Roxbury*, 55 Vt. 552, 556 (1883)); see *State v. Day*, 150 Vt. 119, 123, 549 A.2d 1061, 1064 (1988). In light of the entire instruction in the case before us, we find no error in the charge. See *State v. Snide*, 151 Vt. 343, 344–45, 560 A.2d 380, 381 (1989); *State v. Chambers*, 144 Vt. 377, 382, 477 A.2d 974, 978 (1984). The court repeatedly told the jury that the credibility of each witness was a matter solely for its consideration and emphasized that identification witnesses should be evaluated with regard to truthfulness and opportunity and capacity to observe. Furthermore, the contested instruction limited the duty to reconcile to "where there are two or more witnesses to a given situation."[1] Because the victim

---

[1] The relevant instruction stated:

> The law recognizes that where there are two or more witnesses to a given situation, they may not all remember the same facts in the same way. They may not all observe and remember exactly the same facts because of differences in faculties or observation, and also because of the weakness of human nature in remembering events, facts, or conversations.

was the only witness testifying about the assault, the objectionable language simply did not apply to any testimony.[2] Thus, "there is no fair ground to say that the jury has been misled." See *Bishop*, 128 Vt. at 230, 260 A.2d at 399.

Although we find no error in the charge, we reiterate the admonition made recently in *Snide* that "[i]nstructions to presume that witnesses are truthtellers pass dangerously close to unconstitutional shifts in the State's burden of proof and the presumption of innocence, and threaten to diminish the jury's role as the arbiter of credibility." *Snide*, 151 Vt. at 345, 560 A.2d at 381. In the present case the court did not instruct the jurors directly that "all witnesses are presumed to have testified truthfully," as the court did in *Snide*.[3] Nonetheless, "in providing that the jury should reconcile, if possible, conflicting testimony, the instruction subtly perpetuate[d] the presumption specifically disapproved by this court in [*Snide*], namely that 'a witness is presumed to speak the truth.'" *Oksoktaruk v. State*, 611 P.2d 521, 526 (Alaska 1980).

## II.

Defendant next asserts that the court erred in refusing to suppress a photograph of him obtained through a non-testimonial identification order and the evidence derived from it. The victim positively identified defendant from the photograph. Defendant claims that the manner in which the order was executed violated V.R.Cr.P. 41.1. Specifically, he argues that because execution occurred immediately after the order

---

Witnesses may be absolutely honest and yet disagree in regard to details. And it is for you to say after considering all the evidence what weight you will give to the testimony of each. It is your duty to reconcile conflicting testimonies if you can. If you cannot so reconcile the testimony, then you will have to determine which of the witnesses is entitled to the greater credit. You can believe all that a witness says, or you can believe part of it and disbelieve part of it, or you can disbelieve all of it.

[2] The defense attempted to show that there was physical evidence, rather than another witness's testimony, inconsistent with the victim's identification of the defendant.

[3] In *Snide*, the instructions stated, "It is your duty to reconcile conflicting testimonies if you can, upon the legal theory all witnesses are presumed to have testified truthfully." 151 Vt. at 344, 560 A.2d at 381.

was served on him, he was given no opportunity to contest the time or place for appearance. We disagree.

Section (h) of Rule 41.1 permits a person named in a non-testimonial identification order to request a modification of the time and place for appearance. Section (e) states that the request should be granted "whenever it appears reasonable under the circumstances to do so." Rule 41.1(h)(6) states that the nontestimonial order should include a clause explaining that the order may be modified with respect to time and place upon request to the judicial officer.

The order included a clause stating, "If you file a written request with me within three days after receipt of this order, I will make any reasonable modification of the time and place of appearance . . . ." It was read to defendant in its entirety before he was taken to the police station to have his photograph taken. Thus, the requirements of the rule were complied with. Defendant did not indicate that he wished to request a modification of time or place. Rather, the corporal in charge of executing the order testified that defendant was "very cooperative." At that point, defendant waived his right to modify. Nonetheless, defendant argues that because the order mandated action the very day it was issued and because defendant was read the order and immediately taken to the police station for photographing, he had no realistic opportunity to request a modification of the time or place or to contact an attorney.

There is no indication that defendant wished to postpone the execution of the order. In a similar case, this Court upheld the validity of an order served at 4:20 p.m. directing a suspect to appear at the police station at 5:30 p.m. on the same date. See generally *State v. Howe*, 136 Vt. 53, 386 A.2d 1125 (1978). Moreover, in *Howe*, the suspect's attorney was not served with a copy of the order. Nonetheless, the Court upheld the validity of the order because a defendant has no right to counsel during the precharge nontestimonial identification procedure. *Id.* at 63–64, 386 A.2d at 1131; see *State v. Kennison*, 149 Vt. 643, 646, 546 A.2d 190, 192 (1987) ("[The defendant] is incorrect in claiming that the right to counsel is constitutionally mandated at a nontestimonial identification procedure such as the one here."), *cert. denied*, 486 U.S. 1011 (1988).

## III.

Defendant maintains that the trial court erred in excluding the testimony of defendant's expert witness. The expert proposed to testify that stress diminishes a witness's ability to make an accurate identification; that a witness may unconsciously try to complete an incomplete recollection; and that witnesses' beliefs about their own observations may be unconsciously influenced by outside factors, such as nonverbal cues from others.

■■ Under V.R.E. 702, expert testimony may be admitted if the expert is qualified and if the testimony will be helpful to the trier of fact. "[T]he admission of evidence is highly discretionary. It is a steadfast rule of this Court that '[a]ny discretionary ruling is not subject to revision here unless it clearly and affirmatively appears that such discretion has been abused or withheld.' Moreover, the burden of showing prejudicial error rests clearly on defendant." *State v. Picknell*, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982) (quoting *State v. Polidor*, 130 Vt. 34, 39, 285 A.2d 770, 773 (1971)).

This case may be borderline because the "eyewitness identification of the defendant [was] a key element of the prosecution's case but [was] not substantially corroborated by evidence giving it independent reliability." *People v. McDonald*, 37 Cal. 3d 351, 377, 690 P.2d 709, 727, 208 Cal. Rptr. 236, 254 (1984). In such cases, it may be error not to allow the defendant to introduce "qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury." *Id.* at 377, 690 P.2d at 727, 208 Cal. Rptr. at 254. Nonetheless, we do not find that there was a clear abuse of discretion in the instant case.

The judge's conclusion that the jury would be adequately able to assess the reliability of the victim's identification of defendant was not unreasonable. There is ample authority holding that juries may be made to understand psychological factors which affect the accuracy of an identification when these factors are brought to light at cross-examination and during closing argument. *United States v. Christophe*, 833 F.2d 1296, 1300 (9th Cir. 1987); *United States v. Amaral*, 488 F.2d 1148, 1153

(9th Cir. 1973); *State v. Kemp*, 199 Conn. 473, 478–79, 507 A.2d 1387, 1390 (1986); *State v. Lawhorn*, 762 S.W.2d 820, 823 (Mo. 1988); see *State v. Onorato*, 142 Vt. 99, 105, 453 A.2d 393, 396 (1982). During closing argument, the defense stressed the likelihood that the victim was completing an incomplete recollection and the possibility that her observations were unconsciously influenced by outside factors. During cross-examination, the defense undermined the victim's identification of her assailant by eliciting assurances that she remembered each of the photographs she observed during the photographic layout seven years earlier. The effect of stress and poor lighting on her ability to identify her assailant were also amply probed.

Furthermore, there was some evidence which corroborated the victim's identification of defendant. Her description of her assailant and his clothes prior to her identification of him at the photographic layout was substantially consistent with him and his clothes.

■ Finally, the victim was able to observe her assailant from close proximity over a period of forty-five minutes. Since the crime began as a robbery, the victim was able to observe her assailant before the situation became truly traumatic.[4] In *Onorato*, we held that a jury could assess the reliability of a boy's identification of the defendant without the assistance of an expert witness where he had observed his assailant from close proximity for a substantial period of time before the stressful situation arose. 142 Vt. at 104–05, 453 A.2d at 395–96.[5]

■ Defendant argues that the court's exclusion of the expert testimony violated his state and federal constitutional rights to present evidence in his own defense. "'In the exercise of [these] right[s], the accused, as required of the State, must comply with the established rules of procedure and evidence

---

[4] The fact that before the rape the victim became worried about her new car and asked the assailant to put out his cigarette in the ashtray is evidence that at the time, although perhaps frightened, the victim was not so terrorized that she was unable to observe and analyze what was occurring.

[5] Defendant argues that the holding in prerule *Onorato* is inconsistent with the helpfulness standard of Rule 702. However, the Reporter's Notes state clearly that "[a]s to the necessity of expert testimony, the rule is permissive only — such testimony *may* be heard when it will assist the trier."

designed to assure both fairness and reliability in the ascertainment of guilt or innocence.'" *State v. Kemp*, 199 Conn. at 479, 507 A.2d at 1390 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). We are satisfied that the trial court did not abuse its discretion in excluding the proffered expert testimony on the basis that it would not have aided the jury in its deliberations. "The court's exercise of discretion excluding the testimony did not under the circumstances violate the defendant's constitutional rights." See *id.*

## IV.

Next, defendant maintains that the court committed reversible error when it failed to dismiss a potential juror for cause. Defendant used a peremptory challenge to remove the juror; however, he stated he would have challenged other jurors if he had not been obliged to use one of his peremptory challenges to remove a juror whose daughter had been raped and who expressed an opinion that the police are more prone to tell the truth than other persons.

> Before this Court may consider whether the denial of a challenge for cause was erroneous, we must first determine whether a party has preserved the denial for our review. In order to preserve a denial of a challenge for cause for review, [that party] must satisfy a two-part test demonstrating that he has been prejudiced by the ruling.

*Jones v. Shea*, 148 Vt. 307, 308, 532 A.2d 571, 572 (1987). To satisfy the first part of the test, the appellant must show that "the challenge for cause [was] denied and all peremptory challenges [were] subsequently exhausted." *Id.* at 309, 532 A.2d at 572. "The second part of the test . . . requires that the record reflect that, had the party had an additional peremptory challenge available, the party would have used it to strike another juror." *Id.*

In the instant case, defendant satisfied both parts of the test. A challenge for cause was denied, and the defendant subsequently exhausted all peremptory challenges. He also requested an additional peremptory challenge and indicated that there were additional jurors whom he would have challenged if he had been allowed to do so. Defendant has, therefore, pre-

served the error for our review, and we will consider whether the denial for cause was erroneous.

> When . . . statutory grounds of per se disqualification for potential bias do not exist, the question becomes whether the juror entertains a fixed bias, or whether he can decide the case solely on the evidence. Once a fixed bias has been demonstrated, disqualification is required as a matter of law, but whether the juror entertains an opinion that is truly a fixed bias is a question for the sound discretion of the trial judge who has observed the demeanor of the juror on voir dire. "The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court unless the error is manifest . . . ." The juror's claims of impartiality, of course, are not dispositive on the question of fixed bias. Although they deserve careful consideration "it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'"

*State v. Hohman*, 138 Vt. 502, 510–11, 420 A.2d 852, 857–58 (1980) (citations omitted). Defendant has failed to demonstrate the "actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." See *id.* at 511, 420 A.2d at 858.

Defendant argues that, because the daughter of the potential juror had been raped six years prior to the present trial, he should have been dismissed for cause under a theory of "implied bias." Defendant further argues that the judge refused to dismiss the juror for cause solely because the potential juror stated that he would not be influenced by the rape of his daughter. Finally, defendant argues that the potential juror should have been excused for cause because he expressed confidence in the veracity of the police.

 In Vermont, implied bias has been found only in cases where jurors had some relationship to a participant. See *Jones*, 148 Vt. at 310, 532 A.2d at 573 (jurors were current patients of the doctor defendant); *State v. Kelly*, 131 Vt. 358, 360–61, 306 A.2d 89, 90 (1973) (juror was the aunt of a guard in the prison where defendant allegedly assaulted another guard). In the ab-

sence of a statutory bar or implied bias, jurors should be dismissed if a fixed bias is shown. In the present case, we agree with observations made in a prior case that the "juror appears to harbor a confidence in [his] impartiality based on careful consideration. While . . . this is not dispositive, in the absence of an indication of bias in the record we will not upset the determination of the trial judge, based, as it was, upon the actual observation of the juror." *Hohman*, 138 Vt. at 512, 420 A.2d at 858. In numerous sexual crime cases, courts have affirmed where trial courts refused to dismiss for cause jurors having family members who were victims of sexual crimes. See, e.g., *Stringfellow v. State*, 485 So. 2d 1238, 1241–42 (Ala. Crim. App. 1986) (the. court was not in error for failing to dismiss for cause a juror whose daughter had been previously treated for sexual abuse because she "stated that she would be able to render a fair and impartial verdict, based solely upon the evidence presented at trial"); *Jamison v. State*, 164 Ga. App. 63, 63, 295 S.E.2d 203, 204–05 (1982) (trial court not in error for failing to dismiss for cause a juror whose daughter had been raped five years earlier because "the court had an ample basis upon which to believe the juror would perform her duty justly"); *State v. Hedger*, 115 Idaho 598, 600–01, 768 P.2d 1331, 1333–34 (1989) (no abuse of discretion where trial court refused to dismiss a juror for cause although her first husband was convicted of rape fifteen years earlier and her present husband had pleaded guilty to sexual abuse three years earlier); *State v. Dickinson*, 370 So. 2d 557, 563 (La. 1979) (court did not err in denying challenge for cause of a prospective juror whose cousin had been a rape victim some years prior to trial); *Commonwealth v. Henderson*, 275 Pa. Super. 350, 357, 418 A.2d 757, 761 (1980) (no abuse of discretion to deny a challenge for cause of a juror whose granddaughter had been raped).

Defendant contends that the court applied an erroneous standard in failing to dismiss the juror. The court stated, "I won't excuse him for cause. I think he's stated it fairly clearly, and taken in the totality of everything we've heard. All right." Although the court's explanation lacks the clarity we would desire, it demonstrates that the court considered the juror's statements in the entire context of what had been expressed. Thus, the court considered the juror's answers to all

the questions posed to him as well as the manner in which these answers were given. The court may also have considered that the present case involved the identification of a previously unknown assailant whereas the rape of the juror's daughter involved a person well known to the victim. We find no error in the court's refusal to dismiss the juror because of his daughter's rape.

Defendant also argues that the potential juror should have been dismissed for cause due to his opinion of police veracity. When the juror was asked whether he believed police officers are more prone to tell the truth than other people he answered, "Yes, definitely." When questioned further whether he would be inclined from the beginning to believe a police officer he stated that he "would listen, right." Thereupon, the defendant began an additional question but stopped and stated, "okay, I'll leave it at that." He did not raise the juror's confidence in the police as a ground for dismissal but rather removed him by peremptory challenge, when the judge refused to remove him due to his daughter's rape.

After the jury was selected, the judge called the attorneys to the bench and mentioned to the defense that the juror's "statement that he believed police officers" would have been an appropriate basis for a peremptory challenge. At that point, the defense argued that the juror's confidence in the police was a ground for dismissal for cause. The judge disagreed.

██ "The purpose of [a] voir dire examination is to raise alleged bias 'from the realm of speculation to the realm of fact.'" *Lopez v. State*, 544 P.2d 855, 860 (Wyo. 1976) (quoting *Dennis v. United States*, 339 U.S. 162, 168 (1950)). "It is the obligation of the defendant to examine jurors on voir dire and discover by proper investigation facts affecting their qualifications, and then to seasonably raise that objection with respect to any member of the panel." *Id.* at 861; see also *Roberson v. State*, 456 P.2d 595, 600 (Okla. Crim. App. 1967). Well before using a peremptory challenge to dismiss the potential juror, the defendant was made aware of the juror's view of police officers' credibility. At that point, however, he appeared satisfied. If he was not satisfied, he was free to inquire further. He did not. The juror never stated that he would automatically assume that a police officer is speaking truthfully. In the context of question-

ing about the effect his daughter's rape would have on his ability to be impartial, he stressed several times that he would judge the case on the evidence presented, that he would obey the judge's instructions and that he would abide by the reasonable doubt standard. Thus, he demonstrated a resolve to maintain an open mind and to judge the case on the evidence presented. Under the circumstances, the judge did not abuse his discretion in failing to dismiss the juror for cause.[6]

## V.

Finally, defendant argues that imposition of a longer sentence after his second trial violated his federal right to due process of law.[7] In *North Carolina v. Pearce*, 395 U.S. 711, 723 (1969), the United States Supreme Court held that there is no constitutional bar to "a more severe sentence upon retrial." However, in *Pearce*, the Supreme Court stated that when a defendant receives a higher sentence after a new trial the reasons for the enhanced punishment "must affirmatively appear" in order to assure the absence of "retaliatory motivation on the part of the sentencing judge." *Id.* at 725–26. Later cases have interpreted *Pearce* as holding that when a defendant receives a higher sentence upon retrial a rebuttable presumption of vindictiveness arises. See, e.g., *Texas v. McCullough*, 475 U.S. 134, 138–39 (1986). Defendant argues that the *Pearce* presumption attaches in this case. We disagree.

In subsequent cases, the United States Supreme Court has substantially narrowed its holding in *Pearce*. See, e.g., *Alabama v. Smith*, 490 U.S. 794, 801 (1989) (the *Pearce* presump-

---

[6] The better practice would have been for the court to satisfy itself specifically that the potential juror would not assign undue weight to the testimony of a police officer. However, the record discloses a general attitude by the juror to set aside his prejudices and to judge the case impartially; thus, the court did not abuse its discretion in refusing to dismiss the juror for cause.

[7] We do not address defendant's claim — briefed for the first time in defendant's reply brief — that the harsher sentence on retrial violated his due process rights under the Vermont Constitution. We have stated on several occasions that "[i]t is neither the purpose nor within the proper scope of a reply brief under V.R.A.P. 28(c) to raise new issues not briefed in either appellant's original brief or in appellee's brief." *Condosta v. Condosta*, 139 Vt. 545, 547, 431 A.2d 494, 496 (1981).

tion does not apply where a judge imposes a harsher sentence at the conclusion of a trial than the sentence he imposed after a guilty plea which was subsequently vacated because "in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged"); *Chaffin v. Stynchcombe*, 412 U.S. 17, 25–28 (1973) (the *Pearce* presumption does not apply where a different jury imposes a harsher sentence than the sentence imposed by a jury at a previous trial); *Colten v. Kentucky*, 407 U.S. 104, 116 (1972) (the *Pearce* presumption does not apply where a court trying a case de novo imposes a harsher sentence than that imposed by an inferior court in a two-tier system). Recently, where a judge imposed a higher sentence than that imposed by a jury at a previous trial, the United States Supreme Court held that where "different sentencers assessed the varying sentences" there is no *Pearce* presumption of vindictiveness. *Texas v. McCullough*, 475 U.S. at 140. In the instant case, Judge Cook sentenced defendant at the first trial, whereas Judge Ellison sentenced defendant at the second trial. Because "different sentencers assessed the varying sentences," the *Pearce* presumption does not apply. See *Gauntlett v. Kelley*, 849 F.2d 213, 217 (6th Cir. 1988); *Commonwealth v. Mikesell*, 371 Pa. Super. 209, 225–26, 537 A.2d 1372, 1380–81, *appeal denied*, 520 Pa. 587, 551 A.2d 214 (1988); *State v. Hilton*, 291 S.C. 276, 279, 353 S.E.2d 282, 284, *cert. denied*, 484 U.S. 832 (1987).

 "[W]here the [*Pearce*] presumption does not apply, the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. 559, 569 (1984). Defendant did not allege actual vindictiveness, and "nothing in the record suggests that [the second judge] was motivated by vindictiveness." *Mikesell*, 371 Pa. Super. at 226, 537 A.2d at 1381. Therefore, defendant's federal due process rights were not violated by the imposition of a harsher sentence after his second trial.

 *Affirmed.*