558 A.2d 877

**COMMONWEALTH of Pennsylvania**

**v.**

**John David MALY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1988.

Filed May 3, 1989.

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Ernest J. Disantis, Jr., Assistant District Attorney, Erie, for Com., appellee.

Before BROSKY, ROWLEY and MONTEMURO, JJ.

ROWLEY, Judge:

John David Maly appeals from a judgment of sentence of 12 to 28 years incarceration imposed following his plea of nolo contendre to a charge of involuntary deviate sexual intercourse and pleas of guilty to charges of indecent assault, endangering the welfare of children, and corruption of minors. Appellant had originally been sentenced to 10 to 25 years incarceration for these same crimes. That sen-

tence was vacated by a panel of this Court and the case was remanded for resentencing. 375 Pa.Super. 619, 541 A.2d 30.

Appellant's first challenge is to the legality of his sentence. He argues that because the trial court has failed to affirmatively state on the record any new conduct on the part of appellant occurring after the time of the original sentencing proceeding which would justify the increase in his second sentence, he has been exposed to double jeopardy, as defined by *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The trial court had stated at the second sentencing proceeding that the increased sentence was based upon a psychological evaluation which was performed upon appellant following the remand by this court. Appellant contends that the conclusions made in that report echoed the trial court's prior conclusions at the original sentencing proceeding. Therefore, he argues, the trial court imposed a more severe sentence based upon identical information and conclusions regarding his character and rehabilitative needs, violating the proscription against double jeopardy. We agree.

In *North Carolina v. Pearce, supra,* the Supreme Court considered the question of what constitutional limitations there are upon the power of a judge to impose a longer prison sentence on remand than the defendant originally received at the first sentencing proceeding. The Court held that while a trial judge is not constitutionally precluded from imposing a sentence of greater duration, that longer sentence can only be imposed if it is clear that the longer sentence is not the result of judicial vindictiveness. The court recognized that the Due Process Clause of the Fourteenth Amendment required that a convicted defendant not be penalized for successfully seeking an appeal and being awarded a new trial. "[T]he very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to chill the exercise of basic constitutional rights." *Id.,* 395 U.S. at 724, 89 S.Ct. at 2080, 23 L.Ed.2d at 668 (citation omitted). The court then set

forth the following standard to be applied to test the validity of a sentence of longer duration imposed following a successful appeal:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so *must affirmatively appear.* Those reasons must be based upon *objective information* concerning *identifiable conduct* on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.,* 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670 (emphasis added).

The Supreme Court has reevaluated its position since *Pearce.* In *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), the Court retreated from its previous position that only evidence of conduct occurring after the first sentencing proceeding was relevant and supportive of a longer second sentence. "Restricting justifications for a sentence increase to *only* events that occurred subsequent to the original sentencing proceedings could in some circumstances lead to absurd results." *Id.,* 475 U.S. at 141, 106 S.Ct. at 980–81, 89 L.Ed.2d at 112 (emphasis in the original). The Court went on to describe a situation in which a defendant is convicted and sentenced on the basis of a burglary, apparently his first offense, to a short prison term, but that following his successful appeal and a second conviction after retrial, is found to have been in fact a convicted murderer using an alias. The Court concluded that none of the policy considerations underlying *Pearce* (i.e., judicial vindictiveness) would require that the defendant receive the same light sentence and summarized the meaning of *Pearce* as follows:

> Perhaps then the reach of *Pearce* is best captured in our statement in *United States v. Goodwin,* 457 U.S. [368], at 374, 102 S.Ct. [2485], at 2489 [73 L.Ed.2d 74 (1982)]:

"In sum, the Court [in *Pearce*] applied a presumption of vindictiveness, which may be overcome only by objective information ... justifying the increased sentence." Nothing in the Constitution requires a judge to ignore "objective information ... justifying the increased sentence." In refusing to apply *Pearce* retroactively we observed that "the *Pearce* prophylactic rules assist in guaranteeing the propriety of the sentencing phase of the criminal process." *Michigan v. Payne,* 412 U.S. 47, 52–53, 93 S.Ct. 1966, 1969, 36 L.Ed.2d 736 (1973). Realistically, if anything this focus would *require* rather than *forbid* the consideration of the relevant evidence bearing on sentence since " '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' " *Wasman [v. United States]*, 468 U.S. [559] at 564, 104 S.Ct. [3217] at 3220–3221 [82 L.Ed.2d 424 (1984)] (quoting *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)).

*McCullough, supra,* 475 U.S. at 142–143, 106 S.Ct. at 981, 89 L.Ed.2d at 113 (emphasis in the original). Although the decision in *McCullough* broadens the focus of relevant information concerning the defendant's behavior and characteristics, that decision does not effect the application of *Pearce* to the instant case. Because this case involves the same trial judge imposing a second, more severe sentence, the presumption of judicial vindictiveness applies. *Compare McCullough,* (defendant sentenced by jury following first conviction and by trial judge following second conviction); and *Commonwealth v. Mikesell,* 371 Pa.Super. 209, 537 A.2d 1372 (1988) (defendant tried before, and sentenced by, different judge than the one who had imposed the original sentence). Therefore, the trial court was required to affirmatively set forth on the record objective information concerning identifiable conduct which justified appellant's enhanced sentence. *See U.S. v. Solomon,* 825 F.2d 1292 (9th Cir.1987), cert. denied —— U.S. ——, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988) (failure of district court to affirma-

tively state reasons for enhanced sentence required appellate court to vacate the sentence and remand for new sentencing).

The trial court states in its opinion that it was relying upon the psychological report prepared by Dr. McKinney in imposing the enhanced sentence. Appellant argues that the trial court could not properly base the longer second sentence upon that report because the report was nothing more than a restatement of the trial court's considerations and conclusions which were stated at the previous sentencing proceeding. At the first sentencing proceeding, the trial court stated the following with regard to appellant's character and rehabilitative needs:

The Court has read the defendant's version of the events which the defendant has set forth in detail, not only as to the events, in fact, most of the detail does not go to the events in question, but most of the detail goes to the defendant's past. The court finds the defendant's version to contain what can be best called 'half-truths.' The defendant does set forth excuses for his behavior in terms of drug, and alcohol use, illness, childhood problems, and military service problems. In fact, during most of his version he seems to blame everyone else for being responsible for the actions he took toward the victim but himself. However, at the end of his statement he does indicate to the Court that he accepts responsibility for his actions. The court notes, also, that the defendant has excused his actions or conduct stating that what he did was no more than fondling, and that there were only 6 incidents in a 1 year period.

.    .    .    .    .

The Court notes, also, that the defendant has claimed that he has made mistakes, and he is sorry for those mistakes, and that he, in fact, wants to get back with his wife and daughter. I'm not sure, Mr. Maly, whether your remorse is real or whether your remorse is because you have a great weight hanging over your head, and that is

the sentencing on the part of this Court that you now stand before it for.

.　　.　　.　　.　　.

I'm not sure that you really care about what happened to the victim, but that you only care about what would happen to you if you did not tell the Court that you were remorseful or that you were taking responsibility for your actions. I noted that in the past, and in your version of the events, you have blamed others for what has occurred. You've blamed alcohol. You've blamed drugs. You've blamed mental stress. You've blamed numerous other things or people for your position, but, in fact, it is obvious to the court that because of the long longevity, and extent of your actions, and your conduct that the only person that can be blamed and must be blamed is you.

.　　.　　.　　.　　.

The Court in that matter, Mr. Maly, has considered your character, and it is obvious that there is something sorely lacking in your character to allow these events, not only to occur, but to continue for such a long period of time.

The Court notes your rehabilitative needs, if you can be rehabilitated. It is obvious, because of your numerous problems, real or claimed, that long term incarceration is necessary to deal with those drug, and alcohol problems you claim you have, and in the severity that you claim you have them. It is, also, obvious that to deal with your psychological, and/or mental problems that you may have, that long term treatment through incarceration is necessary. It is obvious to this Court that incarceration is necessary, also, because prior probation back in 1982 obviously failed to rehabilitate you as to alcohol or drug problems or to deter you from further criminal conduct.

.　　.　　.　　.　　.

The Court must, also, protect the people of this community. You are now, at present, a clear, and present danger. In deed, (sic) child offenders often are incapable of being treated. They are, in fact, incurable by the techniques

we presently have available to us in modern day psychotherapy. Hopefully, that is not the case with you, but there is no guarantee for rehabilitation for those such as you. It can only come about through your own efforts. (Sentencing Proceeding of February 24, 1987, pp. 17–23.)

At the second sentencing proceeding, the trial court made extensive reference to the psychological report prepared by Dr. McKinney in support of the enhanced sentence:

The Court has also considered the recent psychological evaluation which the court did not have at the time of the first sentencing. That evaluation specifically goes to your character and the possibility and potential for rehabilitation, two of the most serious factors that the Court must consider when imposing a sentence.

. . . . .

Dr. McKinney notes that the current offenses are admitted by you "but minimized as due to being out of control from use of drugs and alcohol as well as due to the victim's exaggerating events that took place." The drug and alcohol problem is clearly used by you, he points out, as the explanation for the sexual conduct, and is viewed by you as the only matter that needs to be dealt with.

. . . . .

"It appears," according to Dr. McKinney, "that Mr. Maly is dealing with the unacceptable sexual misconduct on his part by shifting the focus to his drug and alcohol abuse, by minimizing the extent and the nature of the sexual abuse, and by contending the victim is exaggerating the events. Mr. Maly refers back to his drug and alcohol abuse to find reasons for most of his behavior. While it is apparent that Mr. Maly depicts a serious substance abuse problem, it is also apparent that the problem is used as a barrier to avoid dealing with other problems that he has."

. . . . .

According to Dr. McKinney, personality testing indicated that you can be viewed as demonstrating a character disorder over the course of your development and currently to be experiencing intense distress due to your present situation. Dr. McKinney notes that you would not be considered to fit a profile of the fixed pedophile in terms of sexual interests towards children as a common part of your thinking and experiences, but rather the offenses demonstrate your poor control of impulses to self gratification of many types.

. . . . .

Concluding, Dr. McKinney states that from a psychiatric point of view Mr. Maly would likely be diagnosed as showing a "boarderline (sic) personality disorder" and to carry a poor prognosis for improvement in the future. "The offenses are connected to Mr. Maly's inpredictability (sic) in pursuit of gratification and opportunism because he lacks typical inhibitions and restraints on behavior. Treatment with individuals like Mr. Maly generally has been associated with negative outcomes and cannot be viewed as a reliable deterrent."

"It should also be recognized that Mr. Maly has shown a lack of effort to deal with his behavior while on his own and a pattern of rejection of external guidance so that there would be a high likelihood of his not following through on treatment in the community."

The Court notes that that specifically and succinctly sets forth your character and rehabilitative needs, particularly in light of your background, the circumstances of these incidents, what the court was aware of prior thereto and after you had been incarcerated for a period of one and one half years.

(Sentencing Proceeding of February 16, 1988, pp. 27–31.)

It is readily apparent in reviewing the record of the two sentencing proceedings that the trial court did not base its second more severe sentence upon any new information or concerns from the psychological report. The trial court's belief concerning appellant's character and rehabilitative

needs remained the same. The mere fact that the trial court was in possession of a psychological evaluation in the second proceeding which supported the trial court's previous conclusions and beliefs was not new information to the trial court concerning appellant's "life, health, habits, conduct and mental and moral propensities." *Pearce, supra,* 395 U.S. at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668, quoting *Williams v. New York,* 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). *See U.S. v. Carrasquillo,* 732 F.2d 1160 (3d Cir.1984) (defendant's continued drug addiction insufficient to support district court's imposition of enhanced sentence).

We cannot accept the Commonwealth's contention that because the psychological evaluation was performed after appellant served one and one-half years of his sentence and was directly related to his character and rehabilitative needs that it supports the trial court's imposition of a longer sentence. Although the report was relevant, it did not provide the trial court any information which the trial court had not considered in imposing the initial sentence. Without evidence of identifiable conduct which was not previously considered by the trial court, [*see e.g., McCullough, supra; U.S. v. Peterman,* 841 F.2d 1474 (10th Cir. 1988) (enhanced sentence upheld where district court considered defendant's subsequent criminal conduct); and *Commonwealth v. Sinwell,* 223 Pa.Super. 544, 302 A.2d 400 (1973) (enhanced sentence upheld where trial court considered defendant's prison break following his second conviction) ] a second sentence imposing a greater penalty than initially imposed cannot stand. Based upon the record of the instant case, we are constrained to vacate the judgment and again remand for resentencing.

Because of our disposition of appellant's first issue, it is unnecessary to consider any of the other issues raised.

Judgment of sentence reversed and case remanded. Jurisdiction is not retained.